**PANHANDLE BANK & TRUST COMPANY, Appellant,**

v.

**GRAYBAR ELECTRIC COMPANY, INC.,**
**and Locus Construction Company,**
**Inc., Appellees.**

No. 8316.

Court of Civil Appeals of Texas,
Amarillo.

Feb. 26, 1973.

Rehearing Denied March 26, 1973.

Gassaway & Gurley, Jody G. Sheets, Borger, for appellant.

Arthur J. Lamb, Amarillo, for appellee Graybar Electric Co., Inc.

Appellee Locus Constr. Co., Inc., did not file a brief.

ELLIS, Chief Justice.

This is a suit involving the question of superiority of rights to certain funds deposited in court claimed by (1) a materialman-garnishor holding a judgment previously obtained against a subcontractor to which the garnishee, the general contractor, was indebted under a construction contract; and (2) an interpleaded lending institution, assignee of the subcontractor's accounts receivable and contract rights. The trial court awarded the deposited funds to the materialman-garnishor, and the assignee lender has brought this appeal on 99 points of error. Affirmed.

The present litigation had its inception when Graybar Electric Company, Inc., a materialman which had obtained judgment against Bryant Brothers Electric Company, made application for a writ of garnishment against Locus Construction Company, Inc., the contractor for the construction of Central Plains General Hospital in Plainview, Texas, for the Hale County Hospital Au-

thority. Locus, the contractor, was holding money due to Bryant Brothers Electric Company, the electrical subcontractor. Bryant Bros. had previously assigned its contract rights and accounts receivable to Panhandle Bank & Trust Company, the lending institution which had made various advances of funds and loans to Bryant Bros., and notice of this assignment had been given by letter to Locus.

After a default judgment in favor of Graybar Electric Company, Inc., previously granted in the garnishment proceeding had been set aside, Locus filed its answer to the writ of garnishment served upon it, admitting, as garnishee, that it was indebted to Bryant Bros. and setting up grounds for filing a bill of interpleader. Locus then filed its bill of interpleader, joining Bryant Bros. and Panhandle Bank & Trust Company as third party defendants and tendering into court the money owed to Bryant Bros. Panhandle Bank & Trust Company filed its answer as an interpleaded party wherein it asserted its claim to the deposited funds. Bryant Bros. filed an answer admitting indebtedness in some amount to both Graybar Electric Company, Inc. and Panhandle Bank & Trust Company.

■ The answer of Panhandle Bank & Trust Company reflects delivery of its pleadings to Graybar Electric Company, Inc., although there was no formal service of its answer upon Graybar. The appellee, Graybar, contends that by reason of such absence of personal service, the appellant failed to show that the court had jurisdiction to render any relief sought by appellant herein. In this suit, Panhandle Bank & Trust Company is not asserting an independent claim against Graybar or intervening in some manner or matter of which Graybar is not aware, but it is making answer to a pleading filed by Graybar, although the term "cross action" may have been employed in certain instances. Graybar had appeared by pleading in the suit as well as by entering an appearance at the trial of the cause and was heard on all matters in controversy. In this garnish-

ment proceeding and interpleader suit all claimants and parties were properly before the court, and the court had jurisdiction to adjudicate the conflicting claims to the funds in question. Thompson v. Fulton Bag and Cotton Mills, 155 Tex. 365, 286 S.W.2d 411 (1956); Home Improvement Loan Company v. Brewer, 318 S.W.2d 673 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.).

The case was tried before the court without a jury. The court made and filed findings of fact and conclusions of law. The parties will sometimes be referred to as "Graybar," "Locus," "Bryant Bros.," and "the Bank." The evidence is undisputed that Bryant Bros. was indebted to Graybar in an amount in excess of that deposited in court, and that Locus was indebted to Bryant Bros. for the amount so deposited. No error was assigned to the court's findings of such facts or to the court's conclusions of law that Graybar is entitled to the funds paid into court unless the Bank establishes its right thereto, and that the Bank has the burden of proof in such respect. Thus, Graybar is entitled to the money deposited in court unless the Bank, which has the burden of proof, establishes not only a right but a superior right to such funds.

In seeking to establish the indebtedness owed to the Bank by Bryant Bros., the Bank presented a Financing Statement and security agreements executed between Bryant Bros., as debtor, and the Bank, as secured party, covering, among other matters, inventory, the contract rights and assignment of accounts in connection with the contract here involved, including "retainage," as well as promissory notes secured by the contract rights as a part of the collateral for the notes. Bryant Bros. had maintained a line of credit with the Bank since 1966, and the subcontract here involved between Locus and Bryant Bros. was entered into on January 8, 1968. The Financing Statement was tendered for filing with the Secretary of State on July 11, 1966. No maturity date was indicated in

the Financing Statement and a Continuation Statement was filed on July 1, 1971. There were various notes and security agreements covering the rights of Bryant Bros. under the contract of January 8, 1968, including notes dated August 15, 1969, and August 21, 1970. The manner in which the Bank credited certain payments on outstanding promissory notes is not clearly shown, and it is indicated that certain payments made by Bryant Bros. were credited to indebtedness other than the notes purportedly secured by the contract rights involved here, and that the Bank did not establish a substantial portion of the indebtedness which it claims is secured under the assignment upon which it relies to establish its claim to the funds paid into court. Thus, Graybar contends that the money obtained by the Bank by reason of the assignment was applied to pre-existing indebtedness rather than to that arising from or relating to the construction project here involved, while the Bank insists that it acquired its security rights prior to the time Graybar obtained its alleged rights under the garnishment.

■ Graybar insists that, under this record, the Bank did not prove up the specific amount that Bryant Bros. purportedly owed the Bank and that it did not establish a valid assignment of the funds in question. Further, Graybar contends that the Bank did not prove, by admissible evidence, the proper filing of a Financing Statement in the Office of the Secretary of the State, which, under the applicable provisions of the Texas Business and Commercial Code, V.T.C.A., is essential to the perfecting of a valid security interest in the contract and the establishment of its asserted right to the interpleaded funds. In this connection, the Bank did not introduce certified copies of the Financing Statement or any other instrument filed in the Office of the Secretary of State as required by Article 3722, Vernon's Ann.Civ. St., but sought to prove up the various instruments presented under the business records act, Art. 3737e, which is not re-

garded as the proper method of proving up the official public records pertinent to this case. See 2 McCormick and Ray, Texas Evidence, §§ 1285, 1286 (2d ed. 1956), at pp. 154–156.

The Bank makes the further contention that its purported security interest in the assignment of accounts receivable and contract rights here involved is valid and constitutes a basis for its claim for superior rights in the funds despite the provisions in the basic subcontract prohibiting assignments of the subcontractor's rights thereunder without written consent of the general contractor when no such consent was obtained. In this connection, the Bank relies upon subsection (d) of Section 9.318 of the Texas Business and Commerce Code, which provides:

"A term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective."

Graybar contends that the above provision regarding the ineffectiveness of the contractual prohibition against assignment of contract rights is applicable only to the subcontractor's equity remaining after the satisfaction of all obligations to materialmen and laborers. In this connection, appellee asserts that under Article 5472e Vernon's Ann.Civ.St., such monies on hand constitute trust funds for the benefit of materialmen and laborers and are not an equity subject to assignment by the subcontractor. Thus, Graybar insists that the Bank cannot establish a valid right to such funds by virtue of such assignment until all obligations to materialmen and laborers have been satisfied.

Article 5472e, V.A.C.S., provides in part, as follows:

"Section 1. All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this

state, . . . are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; provided, however, that moneys paid to a contractor or subcontractor or borrowed by a contractor, subcontractor, or owner may be used to pay reasonable overhead of said contractor, subcontractor, or owner, directly related to such construction contract. The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby made and constituted a Trustee of such funds so received or under his control or direction."

Section 2 of the article defines wrongful disbursement and misapplication of such trust funds as a misdemeanor and felony and attaches a penalty.

The court found, among other factual matters, that (1) Bryant Bros. is indebted to Graybar in the sum of $21,009.23, plus interest, from August 27, 1971, the date of the judgment in favor of Graybar against Bryant Bros.; (2) the writ of garnishment issued upon the application of Graybar was served upon the garnishee, Locus Construction Company, on October 15, 1971, and that on such date Locus was indebted to Bryant Bros. in the sum of $15,161.31; (3) the assignment of collateral by Bryant Bros. to the Bank was applicable only to interest of Bryant Bros. in and to the subcontract after the payment for labor and material and the meeting of all other terms and conditions under the contract; (4) Bryant Bros. did not complete the subcontract, and if Graybar and other materialmen had been paid as required, there would be no proceeds due to Bryant Bros.; (5) the funds paid into court represent monies paid to a subcontractor under a construction contract for the improvement of specific real property within the mean-

ing of Article 5472e, and are trust funds to be held for the benefit of Graybar and other materialmen or laborers for the construction of the hospital; and (6) the consideration given by the Bank for the note which it alleges as the basis of its claim to the funds paid into court was for indebtedness due it for money obtained by Bryant Bros. which was not applied to the performance of the subcontract involved in this case.

The trial court's conclusions of law, include, inter alia, the following: (1) Graybar is entitled to the interpleaded funds unless the Bank establishes its right thereto; (2) the burden of such proof is upon the Bank by showing a valid assignment of the Bank's security interest in and to the funds in question, and that such security interest had been perfected by filing a Financing Statement with the Secretary of State; (3) in order to introduce into evidence any copy of instruments or records filed in the Office of the Secretary of State, the copy must be certified under seal; (4) the funds in question are trust funds and could not be assigned by Bryant Bros. until all materialmen and laborers had been paid in full; and (5) Graybar's right to the $15,161.31 attached when the writ of garnishment was served upon Locus Construction Company, Inc.

■ The Bank, as appellant, has presented points of error directed to the trial court's findings of fact and conclusions of law relating to the following matters: (1) the Bank's alleged establishment of its asserted indebtedness from Bryant Bros. to the Bank as related to its claim for the interpleaded funds (points nos. 1–34 and 99); (2) the court's refusal to admit into evidence the Financing Statement and Continuation Statement tendered by the Bank (points nos. 35–62); (3) the filing and establishment of the security interest of the Bank in the inventory, accounts receivable and contract rights assigned to it as a basis for its claim to the deposited funds (points nos. 63–76); (4) the nature

and validity of the assignment of collateral by Bryant Bros. to the Bank (points nos. 77–89) ; (5) the sustaining of Graybar's claim to the deposited funds and refusal of findings supporting a denial of Graybar's claim (points nos. 90–95) ; and (6) the jurisdictional aspects as related to the non-service of citation of the Bank's answer upon Graybar in the interpleader proceedings and Graybar's appearing and being heard on all matters in controversy (points nos. 96–98).

We have previously disposed of the respective contentions of the parties relating to the court's jurisdiction by our holding that, under the status of the pleadings and the circumstances surrounding this case, the court was fully authorized to adjudicate the conflicting claims of the parties. After a careful consideration of the pleadings, evidence, findings and conclusions of the court, we have determined that all of the remaining points raised are focused upon the fundamental question of whether the Bank has established by admissible evidence, under the applicable statutes, its asserted superior right to the funds deposited in court. It is our opinion that the basic matter for our consideration here is whether, under this record, the assignment by Bryant Bros. to the Bank is effective as to the funds deposited in the court in the light of the provisions of Article 5472e. Graybar takes the position that since the interpleaded funds are declared to be trust funds for the benefit of materialmen and laborers, the Bank cannot show a valid assignment without first showing that all obligations to materialmen and laborers incurred in connection with the construction contract have been fully paid and satisfied. The record indicates that Graybar furnished materials for Bryant Bros. in connection with the hospital construction project for which it has not been paid, and that Graybar's claimed position as a materialman has not been challenged.

It is our opinion that under this record, the rights to the interpleaded funds have been pre-empted by Graybar as garnishor.

The Bank contends that Graybar should not prevail because it had no statutory lien under the Mechanics and Materialmen lien laws governing the priority of rights of materialmen under this construction contract. A review of the provisions of Article 5472e discloses no requirement on the part of materialmen with respect to compliance with such lien laws as a prerequisite for the beneficiary status as to the trust funds constituted by the article. In the case of Owens v. Drywall and Acoustical Supply Corp., 325 F.Supp. 397 (S.D. Texas 1971), a case involving the question of the superiority of a federal tax lien over employees' vacation funds held by an employer under certain contracts pertaining to a construction project, it was held that Article 5472e is an additional security over and above the security provided in favor of laborers and materialmen under the existing statutes, and that it is proper that such article be given a broad construction to effectuate its protective purposes. Thus, because of the trust status of the funds held by the employer for the employees, the federal government's claim under its federal tax lien held against the owner could not supersede the beneficial rights accorded them thereunder. The general tenor of the case law in the area pertaining to funds held for the benefit of materialmen or laborers on construction projects, regardless of the type of stakeholder, establishes the preferred position of materialmen and laborers over assignee money lenders in ascertaining priorities as to the distribution of retained funds under construction contracts, in order to afford those who furnish materials and labor the maximum protection afforded under the applicable statutes. See Pearlman v. Reliance Insurance Co., 371 U.S. 132, 141, 83 S.Ct. 232, 9 L. Ed.2d 190 (1962) ; and General Electric Supply Co. v. Epco Constructors, Inc., 332 F.Supp. 112 (S.D.Texas 1971) and cases cited therein.

In the case of General Electric Supply Co. v. Epco Constructors, Inc., supra, the court significantly pointed out that the

Uniform Commercial Code (included in Texas Business and Commerce Code) did not supersede the rights of materialmen to retainage and funds remaining on hand in connection with public works controlled by statute. The statute involved in this particular case was Article 5160, V.A.C.S., relating to payment and performance bonds, wherein the suppliers were in substantial compliance with the notice requirements before the assignment of the subcontractor's accounts receivable to the lending bank. The bank had complied with all of the provisions of the Uniform Commercial Code with reference to the filing of financial statements and the taking of security agreements from the subcontractor who was indebted to the materialman. Also, another claimant, General Electric, had no security interest under the Code, since it had made no effort to perfect such interests through the filing of financial statements or the taking of security agreements from the subcontractor. In this connection, the court stated that "(t)his deficiency is not dispositive of the instant case, however, since the Court finds that the Uniform Commercial Code did not change the rights of materialmen to retainage and funds remaining on hand in connection with public works controlled by art. 5160. Thus, the security agreement of the Bank is inferior to any allowed claim of a laborer or materialman." Also, in this case, the court pointed out that any excess remaining after the satisfaction of materialmen's and laborers' claims would be assignable under Sec. 9.318 of the Uniform Commercial Code (Texas Business and Commerce Code).

In the case of Owens v. Drywall and Acoustical Supply Corp., supra, the court pointed out that although there have been no cases construing Article 5472e, enacted August 28, 1967, the construction of similar statutes of other states has been on a liberal rather than a restrictive basis. In discussing Article 5472e, the Court stated:

"It should be noted that the Texas statute has only recently been enacted, seemingly to supplement the existing remedies available to laborers and materialmen. See, e. g., Tex.Rev.Civ.Stat. Ann. art. 5160 (1971) and art. 5452, et seq. (1958 and Supp.1970). Thus within the limitation of the statutory terms, the Court should strive for a broad construction in order to 'effectuate its protective purposes.' United States for Benefit on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed. 2d 776 (1957)."

■ In view of the foregoing, it is our opinion that in the case at bar the Texas Business and Commerce Code provisions (U.C.C.) do not supersede the right of a materialman to retainage under a contract. Article 5472e, the statute apparently enacted to give protection to materialmen in addition to that provided by Articles 5452 et seq. and 5160, has constituted all funds paid to a subcontractor under a construction contract such as this, as trust funds for the benefit of materialmen and laborers without any requirement for "filing" or "notice" or other action on the part of the materialman as a prerequisite to the rights provided under the act. However, any assignment of receivables made in favor of a lender and properly perfected as required by the Code would be effective to the extent of "retained" funds, if any, remaining after satisfaction of claims such as Graybar's. General Electric Supply Co. v. Epco Contractors, Inc., supra. In this instance the entire amount of the retained funds would be required to satisfy Graybar's claim as garnishor under the garnishment proceedings.

■ In its supplemental brief filed after the submission of the case on oral argument, the appellant seeks for the first time to invoke an exemption under Section 4 of Article 5472e to the effect that funds received under a construction contract are exempt from the provisions of the Act if the full contract amount is covered by a corporate surety payment bond. We have carefully examined the record and we find

that no corporate surety bond was presented in evidence. Although the appellee vigorously urged during the trial and in its appellate brief the applicability of Article 5472e and its contentions with respect to the trust fund status of the interpleaded monies, the point concerning the alleged exemption was not raised during the trial or otherwise until the post-submission brief.

It is noted that the contract does not expressly require the furnishing of a *corporate* surety bond. An examination of the contract discloses that "the subcontractor shall provide a Payment and Performance bond . . . with surety acceptable to the Contractor, in the full amount of this sub-contract," and that one-half of the premium for the bond will be paid by the subcontractor. Although one of the change orders indicates a charge by the contractor to the subcontractor for one-half of the premium of the bond, we do not deem that the foregoing constitutes sufficient proof of the applicability of the exemption claimed. No bond whatsoever was shown during the trial or is contained in the record. In order to qualify for the exemption, it must be shown that a corporate surety bond was provided in the full amount of the contract and that the terms and conditions of such bond meet the conditions of the contract and satisfy the requirements of Article 5472e. The record before this court does not establish satisfactory proof by the appellant of its assertion of the exemption, and we, therefore, overrule the appellant's contention in this respect.

In this case, the appellant Bank has not contended that the assignment to the Bank was of all proceeds due under the construction contract, but it has recognized that the contractor, Locus Construction Company, Inc., was authorized to disburse the share of Bryant Bros. to various parties having claims against such subcontractor. Further, the evidence shows that payments have been made by the contractor directly to third party creditors of Bryant Bros. and manifests an intent that only the equity of Bryant Bros., and not all of the proceeds under the contract, was the collateral being assigned. Thus, under this record, it is manifested that the assignment was only of the equity of Bryant Bros. after the payment of all labor and material, and that the rights of the garnishor are superior to the rights of the assignee Bank. See Zimmerman Land & Irrigation Co. v. Rooney Mercantile Co., 195 S.W. 201 (Tex.Civ.App.—El Paso 1917, writ ref'd).

In addition to the trust fund priority accorded to materialmen and laborers under article 5472e, it is our opinion that under equitable principles, the rights of Graybar, as garnishor, attached at a time prior to the accrual of any of the contract rights of the Bank as assignee of Bryant Bros. The Bank's rights to the interpleaded funds can rise no higher than those of Bryant Bros. under the contract, and Bryant Bros. had no rights in and to the sums retained under the contract until it had completed its performance thereunder. Under the evidence, Graybar's rights as garnishor of the funds attached at a time prior to the time Bryant Bros. had completed the subcontract and had discharged all obligations required before it was entitled to the payment of the remainder of the money.

After reviewing the evidence, the applicable statutes and authorities, as well as equitable considerations, it is our opinion that the appellant has not established the superiority of the Bank's claim to the funds in question, and that the appellee, as garnishor, is therefore entitled to prevail in its claim. Since this holding is dispositive of the fundamental question in this case, we do not deem it necessary to discuss in further detail the respective points of error submitted, none of which present reversible error.

The judgment of the trial court is affirmed.