Lorin W. **LIVELY**, Appellant,

v.

**CARPET SERVICES, INC.**, Appellee.

No. 01–93–01143–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 27, 1995.

Rehearing Overruled Aug. 31, 1995.

Leslie Werner de Soliz, Houston, for appellant.

Jeffery B. Kaiser, P.C., Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABEL and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellant, Lorin W. Lively, appeals from a summary judgment granted in favor of appellee, Carpet Services, Inc ("CSI"). We reverse and remand.

## BACKGROUND

Lively was the sole shareholder, officer and director of Wayward Development, Inc. ("Wayward"), a general contractor. CSI was a subcontractor in the business of providing and installing carpets. During the latter part of 1991 and early 1992, CSI provided materials and services on nine construction projects for which Wayward was the general contractor. CSI was never paid on the contracts. In April of 1992, Wayward filed for protection under Chapter 7 of the United States Bankruptcy Code. Subsequently, CSI sued Lively for breach of fiduciary duty arising out of the Texas Construction Trust Fund Act. Tex.Prop.Code Ann. §§ 162.001–033 (Vernon 1995) ("Act"). Before trial, the court granted summary judgment in favor of CSI. Lively raises six points of error.

### Remedy

In his first point of error, Lively argues that the trial court lacked jurisdiction to

enter a judgment for breach of fiduciary duty. Lively's position is that the penalty provisions of section 162.032 of the Property Code are the exclusive remedy for violations of the statute, and since CSI chose to sue under the statute (rather than perfect a materialman's lien or file as a creditor in Wayward's bankruptcy), CSI is restricted to the relief specifically provided. Although several courts have addressed the Act, this specific issue has not yet been considered. Lively invites this Court to hold that the penalty provisions of § 162.032 are the exclusive remedy for the misapplication of trust funds.[1]

The supreme court has indicated that the Act should be construed liberally in favor of laborers and materialmen. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985); *Panhandle Bank & Trust Co. v. Graybar Electric Co.*, 492 S.W.2d 76, 81–82 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). In *Grounds v. Tolar Independent School District*, 707 S.W.2d 889, 891 (Tex.1986) the court held that when a cause of action is statutory, the statutory provisions are mandatory and exclusive. Here, however, the statute itself refers to actions other than prosecutions. Under the 1987 amendments, "[i]t is an affirmative defense to prosecution *or other action brought under Subsection (a)* ..." TEX.PROP.CODE ANN. § 162.031(b) (Vernon 1995) (emphasis added). Clearly, this language contemplates enforcement of the Act other than through criminal prosecution. Adopting Lively's position would render this language meaningless. The courts are required to "search out carefully the intendment of a statute, *giving full effect to all of its terms.*" *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920) (emphasis added).

In addition to the text of the Act, the sparse precedent that does exist supports the notion that private causes of action are allowed under the Act. Several of the cases that have been brought under the previous version of the Act have been based on a civil claim. *E.g., Panhandle*, 492 S.W.2d at 81–82; *Nuclear Corporation of America v. Hale*, 355 F.Supp. 193, 197 (N.D.Tex.1973), *aff'd*, 479 F.2d 1045 (5th Cir.1973) ("[A]rticle 5472e [repealed version of § 162] clearly gives Nuclear a civil remedy for breach of trust.").

In this statute there is an absence of an express provision for a private right of action. However, despite the absence of an express provision for a private right of action, a breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) for whose benefit the statute was enacted. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985); *Dann v. Studebaker–Packard Corp.*, 288 F.2d 201, 209 (6th Cir.1961) (applying Michigan law). In the absence of a contrary implication, a criminal statute enacted for the benefit of a special class creates a civil cause of action in favor of the members of such a class. *Howard v. Furst*, 140 F.Supp. 507, 510 (D.C.N.Y.), *aff'd*, 238 F.2d 790 (2nd Cir. 1956), *cert. denied*, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759 (1957).[2] The Texas courts have specifically adopted this rationale. *Caskey v. Bradley*, 773 S.W.2d 735 (Tex.App.—Fort Worth 1989, no writ) (In a suit to recover for injuries sustained by a blind pedestrian and for the death of his seeing eye dog when struck by the defendant's vehicle, the trial court properly submitted negligence instructions based on a statute requiring a driver to take precautions to avoid injuring a

---

1. If a trustee misapplies more than $500, it is a class A misdemeanor. If the misapplication is over $500 and is committed with an intent to defraud, it is a third degree felony. § 162.032.

2. *See* RESTATEMENT (SECOND) OF TORTS § 286, comment d (1965):

 The enactment or regulation may, however, provide only for criminal liability, and not for civil liability.... [In such a case], the court is free, in making its own judicial rules, to adopt and apply to the negligence action the standard of conduct provided by such a criminal enactment or regulation.... The decision to adopt the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so.

pedestrian guided by a dog, and on a statute requiring a driver to sound a horn when necessary and to exercise proper precautions upon observing any incapacitated person upon a roadway, since both statutes created a duty of care other than the ordinary care standard).

■ Additionally, we arrive at our decision on this point because we recognize that the courts in Texas have consistently held that the unexcused and proximately ("legal") causal violation of a statue that either (1) fixes a standard of conduct, or (2) has been adopted as establishing a required rule of conduct for a reasonable person constitutes a breach of a duty of care.[3] *Nixon,* 690 S.W.2d at 549 (adopting a standard of conduct imposed by an ordinance governing minimum standards to which property owner would be held as defining standard of conduct of a reasonably prudent person); *Murray v. O & A Express, Inc.,* 630 S.W.2d 633 (Tex.1982) (holding that an instruction on breach of a duty as to violations of statutes governing truck driver's duty to actuate vehicular hazard warning signal lamps when vehicle becomes disabled on highway proper); *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979) (holding that when a person violates a statute the statute itself states what a reasonably prudent person would have done); *Moughon v. Wolf,* 576 S.W.2d 603 (Tex.1978) (Negligence *per se* is a tort concept whereby a legislative-

ly imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person); *Missouri P.R.R. v. American Statesman,* 552 S.W.2d 99, 102–03 (Tex.1977) (holding that an owner's construction of scaffolding in violation of a statute requiring 22–foot clearance was a proximate cause of an accident, notwithstanding railroad employee's alleged assurances to the owner that 16–foot, 4–inch clearance was adequate).[4]

Consistent with the above analysis and our holding, our supreme court has specifically found that penal statutes may confer private rights of action. *See, e.g., El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987) (holding that the proper standard of conduct may be determined by a penal statute), *Murray,* 630 S.W.2d at 633 (holding that the unexcused violation of a penal statute constitutes a breach of a duty of care if the statute was designed to prevent injuries to the class of persons to which the injured party belongs). Texas law is in accordance with the general precepts that have been developed throughout this country.[5] In this case, there can be no question that CSI is within the class of people the Act was designed to protect and has asserted the type of injury the Act was intended to prohibit.

■ Although the case law is not abundant, it is clear, as the RESTATEMENT (SECOND) OF TORTS notes,[6] that a penal provision in either a legislative enactment or in an

---

3. The Restatement points up a distinction critical in ascertaining whether a violation of a statute, ordinance or administrative regulation constitutes negligence *per se* or "something less," such as mere evidence of the harm—provided, in any event, that such violation is a proximate cause of the harm suffered. A standard fixed by legislation has *per se* effects; a standard adopted from legislation may also have that effect.

4. Even the cases that specifically refuse to adopt the standard of a reasonable person based on a statute follow this type of analysis. *See, e.g., Boyd v. Fuel Distributors, Inc.,* 795 S.W.2d 266 (Tex.App.—Austin 1990, writ denied) (refusing to adopt a standard of reasonable care for a breach of a duty pursuant to TEX.ALCO.BEV.CODE ANN. § 106.03 (Vernon Supp.1987)).

5. *See generally* Thayer, *Public Wrong and Private Action,* 27 HARV.L.REV. 317, 335 (1914);

Lowndes, *Civil Liability Created by Criminal Legislation,* 16 MINN.L.REV. 361, 372 (1932); Morris, *The Relation of Criminal Statutes to Tort Liability,* 46 HARV.L.REV. 453 (1933); Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 COL.L.REV. 21 (1949); *see also* Note, *Negligence Per Se and Excuse for a Statutory Violation in Texas,* 5 ST. MARY'S L.J. 552 (1973).

6. The relevant portion states:

The fact that a statute, ordinance, or administrative regulation provides for criminal punishment for its violation, or for the payment of a sum of money to the injured person as a penalty, does not in itself prevent the imposition of tort liability through the adoption by the court of the standard of conduct required by the legislation or regulation. It is only where the intent of the provision is construed to be that it

administrative regulation has *no effect* upon liability for breach of a duty of care—unless the court determines that the penal provision was intended to *exclude* civil liability. The mere fact that a statute provides for criminal punishment or for the payment of money as a penalty to one aggrieved, does not by itself prevent the imposition of liability. *See, e.g., Alesna v. LeGrue,* 614 P.2d 1387, 1391 (Ala. 1980) (Unlawful service of liquor to intoxicated patron who, while driving, collided with motorcycle on which plaintiff was a passenger); *Williams v. Youngblood,* 152 So.2d 530, 533 (Fla.App.1963) (Statute providing a penalty for permitting child to use a BB gun was held not a measure to protect just children). We follow a distinguished line of Texas precedents by specifically holding that a standard of conduct may be found in a statute silent on the issue of civil liability. *Nixon,* 690 S.W.2d at 549; *American Statesman,* 552 S.W.2d at 102–03.[7]

■ We overrule Lively's first point of error and specifically hold that the Act subjects litigants to civil liability if (1) they breach the duty imposed by the Act, and (2) the requisite plaintiffs are within the class of people the Act was designed to protect and have asserted the type of injury the Act was intended to prohibit.

### Bankruptcy

In his second point of error, Lively argues that the trial court erred "because it failed to consider the effect of Wayward's bankruptcy." Lively's position can be broken down into three arguments: (1) Lively cannot be individually liable because the contracts were between CSI and Wayward; (2) the court impliedly found that Lively was the alter ego

of Wayward; and (3) Wayward's bankruptcy automatically stayed this proceeding.

### 1. Lively's individual liability

■ Lively contends that he is not liable as an individual because the underlying contracts were between Wayward and CSI. CSI claims that Lively did not raise this issue below. To the contrary, both Lively's answer and his sworn affidavit in support of his summary judgment response alleged that he was not liable in an individual capacity.

The Act defines "trustee" as a "contractor, subcontractor, or *owner or an officer, director, or agent* of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds." TEX.PROP.CODE ANN. § 162.002 (Vernon 1995) (emphasis added). In addition, at least one court has interpreted the Act to mean that any officer or director who has control or direction over the funds is also a trustee of the funds, and is therefore personally liable. *Hale,* 355 F.Supp. at 197. Giving plain meaning to the statute, we hold that Lively, who had control over the funds, can be individually liable as the sole owner and officer of Wayward.

### 2. Alter Ego

■ Lively contends that the trial court impliedly found that Lively was the alter ego of Wayward, in violation of the automatic stay provisions of the bankruptcy code. According to Lively, the alter ego finding was necessary to hold Lively individually liable. Again, however, the Act provides for individual liability based on the fiduciary relationship, not on any implied alter ego status of

shall be in lieu of all other remedies that the tort action is necessarily defeated.
RESTATEMENT (SECOND) OF TORTS § 287, comment a (1965).

7. We note that when a defendant is alleged to have breached a duty of care based on the violation of a statute and a statutory violation is proven by the plaintiff, the defendant must present evidence of an excuse for the violation. *L.M.B. Corp. v. Gurecky,* 501 S.W.2d 300 (Tex. 1973). The defendant in this type of suit must

frame his defense in terms of the recognized excuses for the violation at issue. Since these excuses must be affirmatively raised by the evidence, *it is important that the party alleged to have breached a duty arising from a statute be informed prior to trial that the opposing party relies upon the statutory violation.* Thus, a party relying upon a statutory violation should plead this reliance if he is to recover on that basis. *Murray,* 630 S.W.2d at 633.

the trustee. In addition, as CSI correctly points out, alter ego was not pleaded or argued to the court below.

### 3. Automatic bankruptcy stay

■ In conjunction with his alter ego argument, Lively contends that the judgment violated the automatic stay provisions of the bankruptcy code.[8] Lively relies entirely on *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987), which interpreted the scope of the automatic stay provision. The applicability of *S.I. Acquisition* is therefore crucial to Lively's second point of error.

The court in *S.I. Acquisition* first noted that the purpose of the automatic stay is twofold. First, the stay protects the debtor by giving him temporary relief from his creditors and an opportunity to formulate a repayment or reorganization plan. *Id.* at 1146. Second, the stay protects creditors from each other by "providing an orderly [reorganization or] liquidation procedure." *Id.* The court then examined the question of whether a suit based on alter ego liability could proceed against the non-bankrupt co-defendant of a bankruptcy estate. Construing prior case law, the court concluded that because the alter ego cause of action belonged to the bankruptcy estate, it should be stayed. *Id.* at 1153. Thus *S.I. Acquisition* stands for the proposition that the automatic stay provision of the bankruptcy code applies to all "legal or equitable interests of the debtor," and that alter ego liability was such an interest in that case. *Id.* at 1152.

The major distinguishing factor between *S.I. Acquisition* and this case is that the cause of action in this case, at least as between Lively, CSI, and Wayward, could never belong to Wayward. This is not a case based on alter ego. Rather, the statute in this case imposes a fiduciary relationship that can be enforced by a beneficiary (the creditor) directly against a trustee (an owner officer, or director), or in a criminal case, by the state against a trustee. The difference is dispositive; therefore we overrule Lively's second point of error.

### Summary Judgment Evidence

In his third and fourth points of error, Lively attacks the legal sufficiency of CSI's summary judgment evidence.

■ To sustain a summary judgment the movant must establish that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the non-movant as true, indulge the non-movant with every favorable reasonable inference, and resolve any doubt in the non-movant's favor. *Nixon*, 690 S.W.2d at 549.

The Act provides that certain defined funds are "trust funds" over which certain individuals are "trustees" and others are "beneficiaries." TEX.PROP.CODE ANN. §§ 162.001–.003 (Vernon 1995).[9] Construction payments are "trust funds" if they are paid to a contractor "under a construction contract for the improvement of specific real property in this state." TEX.PROP.CODE ANN. § 162.001(a) (Vernon 1995). "Misapplication" occurs when a trustee intentionally or with intent to defraud, directly or indirectly retains, uses or diverts trust funds without first fully paying all obligations to the beneficiaries TEX.PROP.CODE ANN. § 162.031(a) (Vernon 1995).

---

8. The Bankruptcy Code applies an automatic stay to the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. 11 U.S.C. § 362(a)(1) (1988).

9. Contractors are "trustees" if they receive trust funds or have control or direction of trust funds. § 162.002. Subcontractors are "beneficiaries" if they furnish labor or material for the construction or repair of an improvement on property in this state. § 162.003.

Lively contends that CSI failed to prove (1) an intent to defraud; (2) that CSI provided the materials under a construction contract; and (3) that CSI was a "beneficiary" within the meaning of the statute.

### 1. "Intent to defraud"

■ Lively correctly points out that there was no summary judgment evidence to show Lively had an intent to defraud CSI. CSI argues that intent to defraud is not an element of a civil cause of action under the Act, citing *Hale*, 355 F.Supp. at 197, and *McCoy v. Nelson Utilities Services, Inc.*, 736 S.W.2d 160, 165 n. 7 (Tex.App.—Tyler 1987, writ ref'd n.r.e.). In *Hale*, as in *McCoy*, the pertinent statute was former article 5472e,[10] the predecessor to section 162. Both cases held that civil actions arising out of article 5472e did not require a showing of intent to defraud.

Lively points out that section 162.031(a) defines "misapplication" in terms of an intent to defraud. As *Hale* and *McCoy* make clear, however, intent to defraud is only relevant in a criminal prosecution. Requiring a showing of intent to ·defraud would be inconsistent with the fiduciary relationship imposed by the Act. If civil recovery were restricted to instances in which there had been an affirmative intent to defraud, there would be no point in establishing the high standard of care characteristic of the fiduciary relationship.[11]

### 2. "Construction contract"

■ Lively next argues, for the first time on appeal, that CSI never alleged that it had provided materials or labor under a "construction contract." The sworn summary judgment evidence included invoices and certificates designating Lively as a "General Contractor, Commercial Construction," and describing the normal business of Lively as "New Construction, Repair and Remodel to Real Property." The invoices describe carpet materials and installation services. Such evidence establishes a construction contract.

### 3. "Beneficiary"

■ Lively also argues that CSI failed to prove it was a member of the class protected by the Act. Specifically, Lively argues that CSI failed to show that it was an artist, mechanic, contractor, subcontractor, or materialman, as required by the Act, nor that it provided goods for the construction or repair of real property. The record does show that CSI was a "subcontractor" and provided materials "for the repair of real property." CSI introduced certificates, filled out by Wayward, describing the items purchased as "Labor and/or materials furnished and/or installed for Repair and Remodel to Real Property for Texaco Chemical, 3040 Post Oak Blvd., Houston, TX." The Act does not define the term "subcontractor," but the evidence is sufficient to show that CSI is within the meaning of the term as used in the statute.

We overrule appellant's third and fourth points of error.

### Affirmative Defense

Under the Act, it is an affirmative defense that the trust funds not paid to the beneficiaries were used to pay "the trustee's actual expenses directly related to the construction or repair *of the improvement....*" § 162.031(b) (emphasis added). In his fifth point of error, Lively contends that summary judgment was improper because he raised a material issue of fact concerning this affirmative defense.

■ To preserve an affirmative defense, the non-movant not only must raise the de-

---

**10.** Act of May 27, 1967, 60th Leg., ch. 323, §§ 1–7, 1967 Tex.Gen.Laws 770, *repealed by* Act of June 19, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex.Gen.Laws 3475, 3729–30.

**11.** As Justice Cardozo once described the relationship, "A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1929).

fense in its response, it must also provide enough summary judgment evidence to create a fact issue on each element. *Jones v. Texas Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex.App.—Dallas 1993, no writ).

Lively's answer alleged the affirmative defense by stating that the funds had been used "to pay the trustee's actual expenses *directly related to the construction or the repair of the property.*" (empahsis added). In addition, Lively's summary judgment evidence consisted of the following sworn statement:

> Prior to Wayward filing its bankruptcy petition, all sums of money received by Wayward from construction projects that Wayward was involved in were used by Wayward to pay *actual expenses directly related to the construction and office overhead associated with the construction projects Wayward was involved in.*

CSI argues that this statement is insufficient to raise a fact issue regarding the affirmative defense, because it does not show that funds from one project were used for that project's expenses. Although neither party has cited any Texas cases, the Federal courts that have addressed this issue have concluded that the Act does not prohibit the use of construction trust funds for overhead and other "directly related" expenses. *In re Boyle*, 819 F.2d 583, 586 (5th Cir.1987); *In re Nicholas*, 956 F.2d 110, 113 (5th Cir.1992). In an advisory opinion, the Texas Attorney General has concluded that the affirmative defense allows a contractor to pay funds out for overhead and other expenses, even if they are not readily traceable, as long as they were actually incurred. Op.Tex.Att'y Gen. No. JM–945 (1988).

 Lively's sworn statement created a fact issue as to what Lively did with the trust funds that were not paid out to CSI. The burden then shifted to CSI to salvage its right to summary judgment by negating the fact issue raised by Lively. *Adams v. Tri–Continental Leasing Corp.*, 713 S.W.2d 152, 153 (Tex.App.—Dallas 1986, no writ). In its

response, CSI attempted to negate this fact issue by simply reiterating its position that the affirmative defense requires proof that the funds from a particular project were spent on expenses directly related to that project. Because we disagree with this construction of the Act, we sustain Lively's fifth point of error.

Because of our disposition of point of error five, we need not address point of error six. The judgment is reversed and remanded.

O'CONNOR, Justice, dissenting.

I dissent on point of error five only.

To support its affirmative defense, Lively was required to file affidavits that stated facts, not conclusions. *General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 598 (Tex.App.—Houston [1st Dist.] 1993, no writ). Conclusions are not competent summary judgment evidence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

Lively's affidavit merely tracks the language of the statute and provides no evidence. In his affidavit he said the trust funds were used to pay "actual expenses directly related to the construction and office overhead associated with the construction projects Wayward was involved in." That language was lifted from Property Code § 162.031(b), which provides that it is an affirmative defense if the trust funds not paid to the beneficiaries were used to pay "the trustee's actual expenses directly related to the construction or repair of the improvement." Lively's affidavit is no better than the affidavit in *Anderson*, in which a lawyer swore that, contrary to plaintiff's pleadings, he did not commit legal malpractice, was not negligent, did not violate the DTPA, or breach the contract. *Anderson*, 808 S.W.2d at 55. See also *Life Ins. Co. v. Gar–Dal, Inc.*, 570 S.W.2d 378, 382 (Tex.1978) (statement that all adjustments, offsets, and counterclaims were not deducted, could not defeat a motion for summary judgment); *Hidalgo v. Surety Sav. & Loan Ass'n*, 487 S.W.2d 702, 703 (Tex.1972) (statement that note was pur-

chased for valuable consideration, in good faith, without notice of default or dishonor, could not defeat a motion for summary judgment)

I disagree with the majority's conclusion that Lively's affidavit created a fact issue regarding what he did with the trust funds not paid to the beneficiaries.

I would affirm.