# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00091-CV

**Perry & Perry Builders, Inc./Sergio Galvan d/b/a Galvan Plastering Company, Appellants**

**v.**

**Sergio Galvan d/b/a/ Galvan Plastering Company/Perry & Perry Builders, Inc.; Our Lady's Maronite Catholic Church; and Insurance Company of the West, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. 99-07409, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Perry & Perry Builders, Inc. ("Perry") appeals from a district court judgment favoring Sergio Galvan, doing business as Galvan Plastering Company. Perry, the general contractor on a construction project at Our Lady's Maronite Catholic Church, hired subcontractor Hebel SouthCentral, L.P. who in turn hired Galvan. Hebel failed to appear for trial, but Perry appeared. The jury found that Perry benefitted from Galvan's work and failed to compensate him with funds received from the church intended to pay the workers. The court awarded Galvan $86,937.18 in damages, plus interest, and up to $209,000 in attorney's fees against Perry; the court made the same award against Hebel, except that it awarded up to $231,000 in attorney's fees.

The parties raise several issues on appeal. Perry complains that the evidence is legally and factually insufficient to support the judgment and that the district court erred by awarding

Galvan too much in attorney's fees and by refusing to award Perry attorney's fees for defeating some of Galvan's claims. Galvan complains that the district court erred by granting summary judgment that he take nothing on his third-party claims against the church and its surety, the Insurance Company of the West ("ICW") for foreclosure of lien, release of retainage, suit on payment, and conspiracy.

Because we conclude that the great weight and preponderance of the evidence is against the jury's failure to find that Perry spent the trust funds on job-related expenses, we will reverse the parts of the judgment awarding Galvan recovery under the trust-fund misapplication theory and awarding him attorney's fees, and remand these issues to the district court for further proceedings. We will affirm the judgment in all other respects.

## BACKGROUND

The church hired Perry as general contractor on a building project. The contract provides that Perry retains eight percent of the cost of the work as its fee. The guaranteed maximum cost of $1.5 million could be (and was) adjusted by change orders.

Perry hired Hebel as a subcontractor to build exterior walls at the church. The walls required plastering. In its estimate to Perry, Hebel valued the plastering work at $45,000. Hebel hired Galvan to do the plastering on a cost-plus contract for a base amount of $84,000; the contract also contemplated Galvan doing additional unspecified work.[1]

---

[1] The basis for the $39,000 discrepancy between Hebel's valuation of the plaster work in its bid to Perry and in its contract with Galvan is unclear. Witnesses at trial speculated that the cause might have been aggressive or incompetent bidding. There was speculation that Hebel deliberately underbid in order to introduce itself to this region, hoping to recoup the loss with business generated

2

Galvan testified that he performed all the work under the contract, as well as just under $24,000 worth of additional work. His invoice indicates that he billed Hebel a total of $107,937.18, for which Hebel paid him $45,000.[2] Hebel disputed the amount Galvan was due. When the dispute persisted, Galvan filed a mechanic's lien on the church's property.

Hebel filed this suit, seeking a declaratory judgment that Hebel owed Galvan nothing and that Hebel overpaid Galvan. Hebel accused Galvan of falsifying wage records to inflate his costs and, thereby, his fee. Hebel contended Galvan breached their contract.

Galvan countersued Hebel and sued Perry, the church, and ICW. Galvan alleged that Hebel breached their contract and sought, in the alternative, recovery in quantum meruit. Galvan alleged that Perry, the church, and ICW conspired with Hebel to deprive him of the funds. He sought foreclosure on his lien and payment from funds the church should have retained from its payments to Perry. Galvan alternatively sued for recovery in quantum meruit and for payment from a bond held by Perry as principal and ICW as surety. Finally, Galvan contended that Perry misapplied funds the church paid that Perry should have held in trust and used to pay him.

Perry, the church, and ICW filed motions for summary judgment against Galvan, contending that no evidence supported his claims. They contended that the existence of a payment bond prevented Galvan from foreclosing a lien on the church property and from suing for release of retainage because the bond released the church from having to retain funds. *See* Tex. Prop. Code Ann. § 53.201(b) (West Supp. 2003). They contended that Galvan could not recover on the payment

by success in this installation.

[2] On appeal, for the first time, Galvan argues that he seeks to recover $107,937.18 in billed work and an additional $24,000.

3

bond because he did not provide timely or sufficient notice of his claim. They also argued that Galvan's contract with Hebel barred a quantum meruit recovery.

The court considered and disposed of the motions for summary judgment. The court ruled that Galvan take nothing on his claims against the church. The district court granted summary judgment against Galvan on his claims for foreclosure of lien, release of retainage, payment under the payment bond, attorney's fees under the Property Code, and civil conspiracy. The court further granted judgment against Galvan for his claims against ICW for misapplication of trust funds and quantum meruit debt. The case proceeded to trial on Galvan's claims against Hebel and Perry for recovery in quantum meruit and misapplication of trust funds, although only Galvan and Perry appeared at trial.

The jury made several findings. It found that Galvan performed $24,000 worth of compensable work for Perry. The jury also found that Perry intentionally or knowingly, directly or indirectly, retained, used, disbursed, or otherwise diverted trust funds without first fully paying all obligations due to Galvan, and that Perry did not use all the trust funds to pay expenses directly related to the construction. The jury found that Galvan was owed $62,937.18. The jury also found that Galvan incurred $109,000 in attorney's fees for trial, and could incur up to $100,000 in fees on appeal.

Based on the jury's findings, the district court awarded Galvan $86,937.18 in damages, plus $21,223.62 in prejudgment interest, against Perry and Hebel. The court awarded Galvan $131,000 in attorney's fees against Hebel and $109,000 in attorney's fees against Perry for work up to and including trial; the court assessed up to $100,000 in additional attorney's fees if the

4

case proceeded to argument before the Texas Supreme Court. Adding $1793.80 in court costs, the district court concluded that Galvan was entitled to a single recovery of $340,954.60, with Perry liable for at most $318,954.60.

## DISCUSSION

Both Perry and Galvan appeal the judgment.[3] Perry contends that the judgment incorrectly permits a double recovery for the same work under the quantum meruit and misapplication of trust fund theories. Perry also challenges the sufficiency of the proof of the essential elements of quantum meruit, the existence of trust funds in this case, and the permissibility of use of those trust funds. Perry complains that the court had no basis on which to make Perry jointly and severally liable with Hebel for the damages, and should have made an election of remedies for Galvan when he failed to make one himself. Perry further contends that the court erred by awarding attorney's fees against Perry and by failing to award Perry attorney's fees. Galvan complains that the district court erred by granting summary judgment against his claims for foreclosure of lien, release of retainage, suit on payment bond, and civil conspiracy against the church and ICW.

### Challenges to sufficiency of evidence to support damage awards

We will begin with Perry's challenges to the sufficiency of the evidence to support the jury's findings and the court's judgment on both the quantum meruit and the misapplication of trust fund theories.

---

[3] Hebel did not participate in the trial, did not appeal, and did not file a brief.

5

*Quantum meruit*

As part of his first issue, Perry contends that no evidence supports elements of the award based on quantum meruit. In evaluating a legal sufficiency challenge, we must view all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in favor of the judgment. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).

Quantum meruit is an equitable theory of recovery that is based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The court instructed the jury on this theory as follows under question one:[4]

> One party performs compensable work if valuable services are rendered or materials furnished for another party who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work.
>
> You are instructed that a party may recover only when there is no express contract covering the services or material furnished.

---

[4] The supreme court held that the elements of quantum meruit require a plaintiff to establish that "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also West Teleservices, Inc. v. Carney*, 75 S.W.3d 455, 460 (Tex. App.—San Antonio 2001, no pet.). The court's instruction in this case does not require the jury to find that Perry should have known that Galvan expected to be paid *by Perry*. The omission of this element is not an issue on appeal. "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

6

There is no dispute that Galvan performed work, that Perry accepted the work, and that Perry and Galvan had no contract. The dispute is whether Perry should have known that Galvan expected to be paid for the work.

Perry argues that there is no evidence that it knew that Galvan expected to be paid. Perry contends that it had no way of knowing what work was covered by Galvan's contract with Hebel, and so had no reason to know what work was outside the sub-subcontract's scope. Perry also complains that there was no evidence that Galvan obtained a change order to approve deviations from his contract with Hebel, and that Perry's onsite supervisor Rob Delameter was not authorized to bind Perry to pay for extra work. Perry also argues that there is no evidence that Galvan notified Perry that he expected Perry to pay him for the extra work and notes that Galvan testified that he expected Hebel to reimburse him for the extra work.

Galvan testified that Delameter requested, directed, and approved his extra work. Galvan offers a list of work that he did that was outside the scope of his contract with Hebel that was also outside the scope of Hebel's contract with Perry. For instance, the Perry-Hebel contract excludes interior finishes by others; Galvan contends that he was requested to perform and did perform services—such as rasping walls and plaster, repairing plaster at corners, installing round moulds at windows and doors—on interior finishes originally completed by other workers. Galvan says that this extra work was done at Perry's request, not Hebel's.

We conclude that legally sufficient evidence supports the jury's finding in response to question one that Galvan performed compensable work for Perry. Galvan performed work that Perry accepted. Perry knew that its contract with Hebel excluded certain work, and that Hebel hired

7

Galvan to perform some of its duties from the Perry-Hebel contract. These relationships support the inference that Perry knew that the work expressly excluded from the scope of the Perry-Hebel contract also would be outside the scope of the Hebel-Galvan subcontract, and that Galvan would expect to be paid for such extra work. The change-order requirement in the Hebel-Galvan contract does not govern work outside that contract that Galvan performed at Perry's direction. Because the jury was not instructed or asked about whether Delameter could bind Perry, the jury was free to consider whether Delameter's involvement meant that Perry should have known Galvan expected to be paid for the extra work. The fact that Galvan initially asked Hebel to pay him does not preclude his expectation that Perry—whose representative requested, approved, and accepted the work—should know that Galvan expected to be paid. The evidence is legally sufficient under the instruction given to support the jury's finding that Galvan performed compensable work for Perry.[5]

*Misapplication of trust funds*

By its second issue, Perry contends that Galvan was not entitled to recover under his theory of misapplication of trust funds. Trust funds are any payments made to a contractor under a construction contract for the improvement of specific real property in Texas. *See* Tex. Prop. Code Ann. § 162.001(a) (West Supp. 2003). The Code excludes from the definition of trust funds a fee paid to a contractor under a contract signed before the commencement of construction that calls for payment of the costs of construction plus a reasonable fee. *See id*. § 162.001(c) (West Supp. 2003). A contractor is the trustee of trust funds. *See id.* § 162.002 (West 1995). Someone who provides

---

[5] Perry does not challenge the jury's finding in response to question two that Perry owed Galvan $24,000 in quantum meruit.

8

labor or material for the construction or repair project is a beneficiary of trust funds. *See id.* § 162.003 (West Supp. 2003). The Code prohibits a trustee from intentionally or knowingly retaining, using, disbursing, or otherwise diverting trust funds without fully paying all current or past due obligations incurred by the trustee to the beneficiaries. *Id.* § 162.031(a) (West 1995). The Code provides a trustee an affirmative defense if, instead of paying trust beneficiaries, the trustee used the funds to pay other actual expenses directly related to the construction project. *Id.* § 162.031(b) (West 1995). The district court instructed the jury in accord with these provisions of the Property Code.

Perry asserts that no evidence, or, alternatively, factually insufficient evidence, supports the jury's finding in response to question number three that Perry diverted or withheld trust funds from Galvan, arguing that Perry never had trust funds. In evaluating a factual sufficiency challenge, we weigh all of the evidence and can set aside the verdict only if the evidence supporting the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). When the appellant challenges the sufficiency of the evidence to support an adverse jury finding on an issue on which appellant had the burden of proof, we review all of the evidence and can set aside the verdict only if the jury finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We may not substitute our conclusions for those of the trier of fact nor may we pass on the credibility of the witnesses or the weight to be given their testimony. *See Benoit v. Wilson*, 239 S.W.2d 792, 796 (Tex. 1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not interfere with the trier of fact's resolution of conflicts in the evidence. *Benoit*, 239 S.W.2d at 797.

Perry argues that, because its standard operating procedure was to pay various subcontractors from its own funds and then request reimbursement from the church, it never held any funds in trust pending disbursement to its subcontractors. We note that the evidence of Perry's standard procedures was not conclusive; although Collier Perry testified to the company's standard procedure, he also testified that his company "sometimes" paid its bills before requesting repayment by the church. Regardless of the procedure Perry used, the statute creating construction trust funds does not differentiate based on the order in which funds are received and payments made. It provides that "[c]onstruction payments are trust funds under this chapter if the payments are made to a contractor . . . under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001(a) (West Supp. 2003). The only evidence is that the church and Perry had a contract for the improvement of specific real property and that the church's payments to Perry were made for those improvements. Legally and factually sufficient evidence supports the jury's implicit finding that Perry held trust funds.

The evidence also is legally and factually sufficient to show that Perry intentionally or knowingly, directly or indirectly, retained, used, disbursed, or otherwise diverted trust funds "without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." *Id*. § 162.031 (West 1995). Perry either retained as its fee or paid out all funds received from the church. According to Perry's application for payment and the final review by Perry's accountant, Lou Ann Montey, Perry billed and the church paid $1,232,841.30.[6] Perry's fee, 8% of costs, is statutorily excluded from the trust fund. *See* Tex. Prop. Code Ann.

---

[6] Perry's application for payment omits the 30 cents.

10

§ 162.001(c) (West Supp. 2003). In her final review, Montey put Perry's costs at $1,154,942.97.[7]

Eight percent of those costs is $92,395.44.[8] Under the contract, the trust funds totaled $1,140,445.86, calculated as follows: $1,232,841.30 (funds Perry received) – $92,395.44 (fee of 8% of costs excluded from trust funds). The $1.15 million in costs paid exceeded and exhausted the $1.14 million in trust funds.[9] We have affirmed the judgment that Perry incurred a $24,000 obligation to Galvan in quantum meruit.[10] Legally and factually sufficient evidence support the finding that Perry used or disbursed the trust funds without paying its obligation to Galvan.

---

[7] Montey's final cost figure is lower than the $1,198,385.56 figure on the summary sheet of Perry's job-cost ledgers. Part of the discrepancy is apparent from adjustments made in Montey's report (reducing the costs based on the stopped payment on the joint check to Galvan and Hebel, increasing the costs based on additional expenditures), but part of it is unexplained. We use Montey's final cost figure because it is the figure in evidence most favorable to Galvan's claim; her lower cost figure reduces the fee allotted to Perry and increases Perry's profit.

[8] At trial, Collier Perry calculated the fee as 8% of the church's payments, or $98,627.

[9] In the bill Perry sent to the church, Perry used the originally agreed upon $82,700 as its fee. Using that figure, which is 7.2% of the costs, the costs ($1,154,942.97) exceed the trust funds ($1,150,141.30).

After completing her review of Perry's books, Montey reported that the church's payments exceeded Perry's costs by $77,898.33, which she reported as "profit" rather than a fee. Montey testified that this meant that Perry used part of its fee to pay job-related expenses. Even if the profit is recharacterized as a fee, no trust funds remain.

[10] The Thirteenth Court of Appeals has written that quantum meruit claims are not within the scope of the trust fund statute. *See Celanese Coating Co., Devoe Paint Div. v. Soliz*, 541 S.W.2d 243, 247 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.); *Red Henry Painting Co. v. Bank of N. Tex.*, 521 S.W.2d 339, 343 (Tex. Civ. App.—Corpus Christi 1975, no writ). In both cases, the court held that funds derived from a claim in quantum meruit by the construction company against the owner were not trust funds. *See Celanese*, 541 S.W.2d at 247; *Red Henry*, 521 S.W.2d at 343. Funds paid (or owed) to the construction company under a quantum meruit theory are not trust funds because they are not paid "under a construction contract." *See* Tex. Prop. Code Ann. § 162.001(a) (West Supp. 2003). But these cases do not control claims on the trust funds brought on a quantum meruit theory by beneficiaries against the trustee because trust funds must be applied to "*obligations* incurred by the trustee to the beneficiaries" without regard to whether a contract exists between the trustee and beneficiaries. *See id.* § 162.031(a) (West 1995) (emphasis added).

11

We now reach Perry's affirmative defense that, because it used all of the trust funds to pay Perry's actual expenses directly related to the construction or repair of the church property, it did not misapply trust funds. Perry does not have to prove that all of the money it received went to pay beneficiaries. *See* Tex. Prop. Code Ann. § 162.031(b). Perry argues that the jury's failure to find in response to question number four that Perry properly applied all of the trust funds to construction-related expenses is against the great weight and preponderance of the evidence. When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow*, 46 S.W.3d at 241. A court of appeals' holding that a failure to find is against the great weight and preponderance of the evidence does not equal a holding that the contrary finding is established as a matter of law; it merely entitles the appellant to a remand for the jury to redetermine the contested issue. *Waring v. Wommack*, 945 S.W.2d 889, 893 n.3 (Tex. App.—Austin 1997, no writ). As in legal-sufficiency reviews, during a factual-sufficiency review we bear in mind that the jury is the sole judge of the credibility of witnesses and is entitled to accept or reject any testimony it wishes, as well as to decide what weight to give the testimony. *Trinity Industries, Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 862 (Tex. App.—Austin 2001, pet. denied).

The statute does not expressly describe the type of evidence necessary to sustain the burden of proof on the affirmative defense. We are dissuaded from looking to the law governing traditional trusts because the Texas Trust Act—including provisions governing the duties of a trustee and the right to demand an accounting—expressly does not apply to construction trusts. *See* Tex.

12

Prop. Code Ann. § 162.004(b) (West 1995). A contractor-trustee may prove that it allocated trust funds to pay general administrative expenses even if the expenses are not directly traceable to a particular project, so long as the expenses were actually incurred. *See Lively v. Carpet Services, Inc.*, 904 S.W.2d 868, 876 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also* Op. Tex. Att'y Gen. No. JM-945 (1988). In *Lively*, the court reversed a summary judgment against a contractor-trustee, concluding (over dissent) that the contractor-trustee raised a fact issue on its affirmative defense by means of a sworn affidavit tracking the statutory language declaring that the trust funds were used to pay project-related expenses.[11] *Lively*, 904 S.W.2d at 876.

Generally, the uncontradicted testimony of an interested witness, such as a party to the suit, does no more than raise a fact issue to be determined by the jury. *Cochran v. Wool Growers Cent. Storage Co.*, 166 S.W.2d 904, 908 (Tex. 1942). But there is an exception to this rule. "[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Id*. *Accord*, *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). This exception to the interested-witness rule is more compelling when the opposing party has the means and opportunity

---

[11] We recognize that the applicability of *Lively* is somewhat limited in the instant case because the amount of proof necessary to overcome a motion for summary judgment is substantially less than that necessary to overcome a jury verdict. *Compare Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999) (in traditional summary-judgment practice, nonmovant must produce evidence showing fact issue if movant produces evidence showing entitlement to judgment); *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 240 (Tex. App.—Austin 2002, pet. filed) (scintilla of evidence defeats no-evidence motion) *with Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (judgment reversed only if jury finding so contrary to overwhelming weight and preponderance of evidence as to be clearly wrong and manifestly unjust).

of refuting the testimony and fails to do so. *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169-170 (Tex. 1965). The party's failure to contradict the interested witness's testimony does not, however, preclude a court from holding that a fact issue is raised when circumstances in evidence tend to discredit or impeach the testimony of the interested witness. *Id*.; *see also Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

The chief evidence on this affirmative defense is Perry's job-cost ledgers. These ledgers list hundreds of itemized invoices with brief descriptions of the nature of the payment, dates, amounts paid, and other information. The ledgers were accompanied by a summary page showing total costs assigned to various categories, such as general conditions, bond, masonry, and wood framing. The summary page contains a grand job-cost total of $1,198,385.56, while Montey reported that Perry's job-related expenses were only $1,154,942.97; under either figure, the job-related costs exceed the trust funds available.[12] When asked if these amounts reflected payments for expenses directly related to the construction job, Collier Perry answered affirmatively. He also testified that his company spent some of its fee—excluded from the trust fund by Texas Property Code section 162.001(c)—on the costs of construction. Montey testified that her review of Perry's records indicated that Perry acted consistently with its practice of paying subcontractors and suppliers, then requesting reimbursement from the owner.

Galvan points to no evidence supporting the jury's failure to find, but instead challenges Perry's evidence. He contends that Montey's testimony about Perry's general practices

---

[12] As discussed above, Montey's lower cost figure yields $1,140,445.86 in trust funds. The higher cost figure from the ledgers yields a trust fund of $1,136,970.46 ($1,232,841.30 (funds Perry received) – $95,870.84 (fee of 8% of costs excluded from trust funds)).

14

is unpersuasive because she was not involved in the actual payment of the expenses on this job. This echoes Galvan's argument at trial that some of the job-cost ledger items were too general (*e.g.*, payments to "Visa") to prove that they represented payments for job-related expenses. Collier Perry conceded that he did not make the entries in the job-cost ledgers. Galvan contends on appeal that Perry's retention of funds Montey termed "profit" shows that Perry diverted trust funds to itself and defeats Perry's claim that it used all trust funds for job-related expenses.

We conclude that the jury's failure to answer question four in the affirmative is against the great weight and preponderance of the evidence. Collier Perry's testimony that the entries in the job-cost ledgers reflect payments of construction-related costs is clear, direct, and uncontroverted. Neither the line items in the job cost ledgers nor the summary page's categorization of job-related expenditures have been refuted. There is no evidence that any of the payments were not job-related, only argument that the ledgers were not sufficiently detailed. Perry's retention of a fee or profit is not evidence of misapplication of funds because the fee is, by law, not part of the trust funds. *See* Tex. Prop. Code Ann. § 162.001(c) (West Supp. 2003). Because the only evidence in the record on this issue is contrary to the jury's negative answer to jury question four, and that evidence is clear and direct, we conclude that the great weight of the evidence is against that failure to find. Accordingly, we reverse the judgment against Perry on the trust-fund theory and remand this issue for further proceedings. *See Waring*, 945 S.W.2d at 893 n.3.

**Other issues**

Our disposition of these evidentiary sufficiency issues affects our consideration of many of the remaining issues on appeal. Our reversal of the award against Perry based on the

15

misapplication of trust funds and remand of that issue renders unnecessary and therefore inappropriate any consideration of whether recovery by Galvan against Perry under both the misapplication of trust funds and quantum meruit theories constitutes a double recovery. *See* Tex. R. App. P. 47.1. Neither should we opine regarding joint and several liability and election of remedies because we cannot foretell what effect the proceedings on remand will have on the district court's judgment. Any opinion written before the trial court has fully resolved these issues would be premature. The issues remaining for our consideration concern Galvan's entitlement to recover attorney's fees, his contention that the district court erred by granting summary judgment against several other claims against Perry and others, and Perry's claim for attorney's fees.

### Galvan's attorney's fees

We will address the attorney's fees award to Galvan only to the extent of concluding that attorney's fees are available under the Galvan's claim for misapplication of trust funds. The district court awarded attorney's fees based on the awards under the quantum meruit and the misapplication of trust fund theories without specifying which fees accrued for which claim. Perry concedes that an attorney's fees award is authorized for a quantum meruit claim, but correctly notes that the trust fund statute does not expressly authorize an award of attorney's fees.[13] *See* Tex. Prop. Code Ann. § 162.001-.033 (West 1995 & Supp. 2003). Attorney's fees cannot be awarded unless such recovery is provided for by statute or by contract between the parties. *See Dallas Cent.*

---

[13] It is also true that the trust fund scheme does not expressly authorize civil suits to enforce its terms, but such suits are allowed. *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 871-73 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

16

*Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). Attorney's fees are recoverable on a quantum meruit claim because such claims fall within a general statute authorizing recovery of attorney's fees "if the claim is for: (1) rendered services; (2) performed labor; [or] (3) furnished material . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997); *see Angroson, Inc. v. Indep. Communications, Inc.*, 711 S.W.2d 268, 274 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *see also Burditt v. Sisk*, 710 S.W.2d 114, 116 (Tex. App.—Corpus Christi 1986, no pet.).

Galvan's requested relief for the misapplication of trust funds is similar to his requested relief under his quantum meruit theory. The trust fund scheme was intended to ensure that funds paid for construction projects reach the people or companies providing labor and materials for the projects. *See* Tex. Prop. Code Ann. §§ 162.003, .031 (West 1995 & Supp. 2003); *see also Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 870 (Tex. App.—Houston [1st Dist.] 1995, no writ). In both claims, he seeks payment for work performed on the construction project. He does not seek recovery under any consequential or punitive tort damage theory. Like quantum meruit, his request for an award equal to the amount of funds that were intended to compensate him for work provided is within the statute authorizing an award of attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001. We conclude that attorney's fees are available for a claim that construction trust funds were misapplied if the relief requested is compensation for work performed or materials supplied. Because Galvan's claim is thus limited, we cannot render judgment as a matter of law that he recover no attorney's fees on his claim. However, because we are reversing the misapplication recovery and remanding the claim for further proceedings, we must reverse the

17

attorney's fee award that was based in part on that theory and remand that issue for further proceedings.

### *Galvan's challenge to the summary judgment*

Galvan claims by his sole cross-point that the district court erred by granting summary judgment against his claims against Perry, the church, and ICW for foreclosure of lien, release of retainage, suit on payment bond, and civil conspiracy.[14] Galvan complains about the summary judgment against his several theories to recover for the $62,937 of his labor and materials incorporated into the church's property. He sought to foreclose on a mechanic's lien. *See* Tex. Prop. Code Ann. § 53.154 (West 1995). He contended that the district court should have ordered the church to pay him out of its required retainage—10% of the money the church owed Perry. Alternatively, Galvan requested that Perry pay him from the payment bond it held through ICW. *See* Tex. Prop. Code Ann. § 53.208 (West 1995). Finally, Galvan alleged that Hebel and Perry conspired to avoid paying Galvan. The district court granted the motion for summary judgment against all of these claims.

The existence of the payment bond defeats both the foreclosure and the release of retainage claims against the church. (Galvan lodged these claims only against the church and its property, not Perry or ICW.) The filing of the payment bond barred Galvan from suing the church for payment. *See* Tex. Prop. Code Ann. § 53.201(b) (West Supp. 2003); *see also Fidelity & Deposit*

---

[14] The district court also granted summary judgment against Galvan's claims for misapplication of trust funds against the church and ICW, and quantum meruit against ICW. The judgment is supported by the absence of evidence that the church or ICW held trust funds or that ICW authorized or retained the product of any of Galvan's work or materials.

*Co. v. Felker*, 469 S.W.2d 389, 390 (Tex. 1971). The court did not err by granting summary judgment against these claims.

Nor did the court err by granting summary judgment against Galvan's claim on the payment bond because he sued too late. If a payment bond is recorded with the county clerk when the claimant files a lien, the claimant "must sue on the bond within one year following perfection of his claim." Tex. Prop. Code Ann. § 53.208 (West 1995). To perfect a claim, the claimant must either fix a lien, *see id*. §§ 53.051-.059 (West 1995 & Supp. 2003), or give required notice to the contractor and the surety. *See id*. § 53.206(a) (West Supp. 2003). The payment bond was filed with the clerk February 6, 1998.[15] Galvan filed his lien on December 9, 1998 and served a copy of the notice of demand for payment on the church, Perry, and Hebel. Galvan filed his claim on the payment bond in this suit on December 15, 2000. Galvan sued on his perfected claim after the one-year limitations period expired.

Galvan argues that he should be allowed to proceed with his claim on the bond because Perry and others conspired to keep the bond secret from him. It is undisputed that Hebel denied there was a payment bond and that Perry failed to produce one while producing a performance bond in response to Galvan's request. (Collier Perry testified that the failure to provide the payment bond was a mistake.) Galvan contends that this combination of actions misled him to believe that there was no payment bond. Galvan's argument ignores the fact that the payment bond

---

[15] Galvan argues in his response to the motion for summary judgment that the church intimates that it did not file the bond until 1999. This intimation does not create a fact question in the face of the certified copy of the bond from the county clerk's records file-stamped on February 6, 1998.

19

was on file with the county clerk's office beginning February 6, 1998 and that it was on file when he filed his lien with the county clerk's office. "An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument." Tex. Prop. Code Ann. § 13.002 (West 1984). We conclude that, even if Galvan's conspiracy theory is true, he cannot overcome the statutorily deemed notice of the payment bond. The court did not err by granting summary judgment against Galvan's claim on the bond.

Nor did the court err by granting summary judgment against Galvan's claim for civil conspiracy. The elements of conspiracy are that two or more persons, in order to accomplish an objective, agree on the object or course of action and commit one or more unlawful, overt acts that damage another person. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Galvan contended that Perry, Hebel, and the church conspired to convert funds rightly his to their own use. He alleged that the conspiracy was shown by (1) Hebel and Perry meeting regarding disputes on the project without inviting him, (2) Hebel's denial of the existence of a payment bond, and (3) Perry's failure to produce the payment bond upon request. There is no evidence that Hebel and Perry discussed Galvan's claims; rather the evidence is that the meeting concerned disputes among Hebel, Perry, and the church. There is no evidence that Perry denied the existence of a payment bond, only that Perry failed to send it upon request. Even if Perry's failure to produce the bond were the result of a conspiracy, there is no evidence that any harm resulted because the filing of the payment bond with the county clerk constructively notified Galvan of its existence. *See* Tex. Prop. Code Ann. § 13.002. There is no evidence that Perry told Galvan not to look in the county clerk's records or,

20

with others, prevented or hindered him from doing so. The district court did not err by concluding that no evidence supported Galvan's conspiracy claim.

### *Perry's claim for attorney's fees*

By its fifth issue, Perry argues that the district court erred by not awarding Perry attorney's fees for prevailing against Galvan's attempt to foreclose on his lien on the church property. Texas law provides that "in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court may award costs and reasonable attorney's fees as are equitable and just." Tex. Prop. Code Ann. § 53.156 (West 1995). The award of attorney's fees is permissive, not mandatory, and committed to the discretion of the district court. *See Texas Constr. Assoc., Inc. v. Balli*, 558 S.W.2d 513, 522 (Tex. Civ. App.—Corpus Christi 1977, no writ); *see also Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). A court abuses its discretion by acting arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet*, 972 S.W.2d at 21. Despite the fact that Perry prevailed by persuading the district court to declare the lien unenforceable, the district court was not required to award attorney's fees. *Tarrant Appraisal Review Bd. v. Martinez Bros. Inv., Inc.*, 946 S.W.2d 914, 919 (Tex. App.—Fort Worth 1997, no writ). We find no basis on which to conclude that the district court abused its discretion.

### CONCLUSION

Concluding that the evidence is factually insufficient to support the jury's finding underlying the district court's award of damages to Galvan from Perry under the trust-fund theory, we reverse that part of the judgment and remand it for further proceedings. We also reverse the

21

award of attorney's fees to Galvan and remand it for further proceedings.  We affirm the judgment in all other respects.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Aboussie[*]

Affirmed in Part; Reversed and Remanded in Part

Filed:   July 24, 2003

---

[*]   Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).