**Affirmed in Part, Reversed in Part, and Remanded and Memorandum Opinion filed February 25, 2022.**



In The

`

# Fourteenth Court of Appeals

---

### NO. 14-17-00040-CV

---

## MARK YOUNG, Appellant

## V.

## BELLA PALMA, LLC, Appellee

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2013-68322**

---

### MEMORANDUM OPINION

This case returns to us on remand from the Supreme Court of Texas. Appellee Bella Palma, LLC sued appellant Mark Young ("Mark") and his brother Tim Young a/k/a Paul Timothy Young ("Tim") doing business as "Texcore Construction and Texcore Construction Specialty" ("TCS"), asserting claims for declaratory judgment, fraud, negligence, gross negligence, breach of warranty, violations of the Deceptive Trade Practices-Consumer Protection Act ("DTPA"), violations of the

Texas Construction Trust Fund Act ("CTFA"), and violations of the fraudulent lien statute. *See* Tex. Bus. & Com. Code Ann. § 17.49; Tex. Civ. Prac. & Rem. Code Ann. § 37.004; Tex. Prop. Code Ann. §§ 12.002, 162.031. At the trial court, Mark challenged the service of citation; Tim was never served with citation. Subsequently, in an order titled "Final Judgment," the trial court granted Bella Palma's motion for summary judgment and rendered judgment against Mark d/b/a TCS. Mark timely appealed the trial court's judgment to this court.

This court abated the appeal for the trial court to clarify whether the judgment was final. The trial court signed a clarifying order stating the trial court's order was intended to be a final judgment for all purposes. Mark filed an appeal from the trial court's clarifying order, which was assigned case number 14-18-00419-CV. This court concluded that the judgment was interlocutory and dismissed both of Mark's appeals for lack of jurisdiction. *Young v. Bella Palma, L.L.C.*, 566 S.W.3d 829, 835–36 (Tex. App.—Houston [14th Dist.] 2018), *rev'd*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam).

Bella Palma appealed to the Supreme Court and challenged this court's conclusion that this court lacked jurisdiction under appellate case number 14-18-00040-CV.[1] The Supreme Court granted review and concluded that the trial court's judgment was final. *See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam). The Supreme Court noted the trial court's clarifying order issued after our abatement and concluded:

> Here, the Clarifying Order left no "doubt about finality," so the court of appeals erred in turning to the record to resolve the issue. Instead the appellate court was obligated to take the clarification order "at face value," . . . as a "clear indication that the trial court intended the order

---

[1] Mark did not appeal our judgment dismissing his appeal in appellate case number 14-18-00419-CV for lack of jurisdiction, and our mandate in that appeal issued on February 28, 2019.

2

to completely dispose of the entire case."

*Id.* (quoting *In re Elizondo*, 544 S.W.3d 824, 828 (Tex. 2018) (per curiam) (orig. proceeding); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001)). The Supreme Court reversed this court's judgment and remanded the case for us to consider the remaining two issues in Mark's appeal.

Mark's remaining two issues are the first and third issues raised in his brief, in which he argues that: the trial court erred when it granted Bella Palma's traditional motion for summary judgment and motion to withdraw the order granting Mark's motion to quash service of citation because he had not appeared or answered, and that Bella Palma did not prove its claims as a matter of law.[2] For the reasons discussed below, we reverse the trial court's judgment in part as to Bella Palma's claims for breach of contract and the filing of a fraudulent lien, as well as the trial court's award of attorney's fees. We affirm in part the remainder of trial court's judgment and remand the remaining issues to the trial court for further proceedings.

## I. BACKGROUND

On November 13, 2013, Bella Palma filed suit against Mark and Tim d/b/a TCS, seeking a declaratory judgment that a lien Mark filed on Bella Palma's property was invalid and that Bella Palma owed no money to Mark, and also requesting money damages arising from fraud, negligence, gross negligence, breach of warranty, and violations of the DTPA, the fraudulent lien statute, and the CTFA. In August 2014, Mark, appearing pro se, filed a motion to quash that included "in the alternative" a general denial. The motion also requested a jury trial, attorney's fees, disclosures from third-party defendants, and that the trial court render judgment that Bella Palma take nothing. Tim was never served and did not appear or answer

---

[2] In his second issue, Mark argues that the trial court's judgment is interlocutory.

3

in the case.

## A. BELLA PALMA'S LIVE PLEADING

On October 27, 2016, Bella Palma filed its first amended petition, which stated that Mark lives and resides in Texas and that Mark "was served and has answered." Bella Palma stated in its petition that it "spent considerable time, effort[,] and money planning, investing[,] and working towards creating and operating a one of a kind steakhouse in Katy, Texas with an adjoining spa." After purchasing the lot for its project on Mason Road and making extensive planning preparations, Bella Palma hired Trentham Construction as the general contractor to complete the project.

In January 2012, Trentham Construction hired Mark and Tim d/b/a TCS to do site work on the project. Mark's work on the job site was "exceedingly slow," and he demanded payments despite "extremely little activity on the site . . . ." Bella Palma subsequently learned that Mark had financial shortcomings in a different project and was "using [Bella Palma's] project to obtain cash to pay for work it was doing on another site." By June 2013, the project was "way behind schedule" and Trentham Construction met with Mark regarding "three growing concerns": (1) Mark was submitting false invoices for work he claimed was completed when it was not; (2) Mark was increasingly difficult to work with, could not complete the project within the timeframe promised, and would not follow "TC protocol and instruction for the project"; and (3) although Mark was being paid directly for third-party-vendor invoices, Mark was pocketing the money and not paying the vendors. At that time, Mark's vendors (1) Spirit Sand and Clay and (2) Morrison Supply Company sent letters to Bella Palma "demanding payment and threatening liens."

Bella Palma attempted to obtain a construction loan to fund the remainder of the project but was unable to because the "title company could not clear title because [Mark] had not finished [his] work." After Mark was informed of this issue, Mark

4

requested that Bella Palma allow him to finish the work and assured Bella Palma that the work would be completed in ten days or within a couple of weeks at the maximum. Mark also requested that he "be put in charge of the horizontal to finish" and "[b]ased on this assurance, [Bella Palma] agreed."

"Three weeks later, [Bella Palma] scheduled the inspection with the bank, with the assurance from [Mark] that everything was in place . . . and [Bella Palma] arranged the inspection by the title company." However, "[r]ather than complete the work, [Mark] just bulldozed the sand over [his] unfinished work without getting inspections completed after [Bella Palma] explicitly told [him] not to do so." Ultimately, Bella Palma was forced to shut down the project, "[t]he chefs were let go and the . . . Aveda salon was closed, the staff was let go and the [Bella Palma] center officially failed."

After the project was shut down, Mark provided Bella Palma with a "final billing" totaling almost $19,000.00. Bella Palma paid the final bill but later received a letter from Volvo Rents, another of Mark's vendors, threatening a lien on Bella Palma's property due to an outstanding bill of over $10,000. Bella Palma alleges that it previously paid Mark for this bill and that it paid Volvo Rents again directly to prevent the filing of a lien on the property. Bella Palma alleges that Mark subsequently manufactured a new "final bill" for $83,000 "for the rest of the project for work it has not done yet" and that Mark filed a fraudulent lien in 2013 against Bella Palma's property when he learned about the lawsuit against him.

## B. SUMMARY JUDGMENT EVIDENCE

The day after filing its amended petition, Bella Palma filed a traditional motion for summary judgment and attached supporting affidavits from James Stanka, Gary Trentham, and Ron Frank, as well as fifteen exhibits. The trial court conducted an oral hearing on Bella Palma's motion for summary judgment on

November 21, 2016. The reporter's record from this hearing is not before this court.

Stanka's affidavit provides that he is the owner and operator of Bella Palma, and Trentham's affidavit provides that he is the owner and operator of Trentham Construction. According to Stanka and Trentham's affidavits, Trentham Construction was hired by Bella Palma to complete a commercial construction project on Mason Road, and Trentham Construction hired Mark and Tim d/b/a TCS to do the site work for this project in January 2013. A copy of the January 2013 contract executed between Trentham Construction and Mark d/b/a TCS was attached to Bella Palma's motion for summary judgment.

The contract between Trentham Construction and Mark provides: "The substantial completion of this Contract shall be SIXTY (60) calendar days, excluding national holidays or less following the post-Permitted groundbreaking. Final Completion shall be NINETY (90) calendar days, excluding national holidays or less following the post-Permitted groundbreaking." However, according to Stanka and Trentham's affidavits, Mark's work was exceedingly slow and Mark failed to finish the project by its completion date of May 16, 2013. Furthermore, Bella Palma paid Mark directly for third-party vendor invoices but Mark pocketed the funds and did not pay his vendors. By June 2013, Mark's vendors, including (1) Spirit Sand and Clay and (2) Morrison Supply Company, "were sending registered letters demanding payment and threatening liens to Trentham Construction and Bella Palma."

In August 2013, Trentham and Stanka learned that Spirit Sand and Clay was on the way to the courthouse to file a lien against the property because Mark failed to pay the invoice, even though Stanka had already paid Mark for the invoice. Trentham and Stanka also received collection letters from Morrison Supply Company, seeking collection of money that Stanka had already paid Mark. That same month, Bella Palma fired Mark and shut down the project.

In their affidavits, Stanka and Trentham testified that Mark then prepared a "final accounting" and "final billing" for approximately $19,000; Bella Palma paid the final bill on September 10, 2013; and Mark "immediately cashed the check." Nevertheless, over a month later, Stanka received a lien letter from Mark's vendor Volvo Rents, "claiming that it was going to file a lien on the property for not being paid $11,710.70." According to Stanka, Bella Palma paid Mark for this bill, and Mark "pocketed the money rather than paying this vendor." Bella Palma paid Volvo Rents directly on October 24, 2013, to satisfy the lien resulting from Mark's failure to remit payment.

According to Stanka and Trentham's affidavits, the contract with Mark was for $133,665.76, but Bella Palma paid Mark a total of $151,721.76. Nevertheless, on October 22, 2013, Mark sent a letter to Trentham and Bella Palma demanding payment of $119,397.43 for sums allegedly due from the project. Bella Palma then filed the underlying suit. According to Stanka, when Mark found out about the lawsuit, he filed a fraudulent lien against Bella Palma's property in December of 2013, which has prevented Stanka from obtaining any financing on the property. A copy of the lien filed by Mark on Bella Palma's property on December 13, 2013, with the Harris County Clerk for $33,313.83 was attached to Bella Palma's motion. The other exhibits attached to Bella Palma's motion for summary judgment included copies of invoices, documents, and letters related to the work on the project.

## C. TRIAL COURT'S RULING

On November 21, 2016, the trial court signed a final judgment in favor of Bella Palma and against Mark d/b/a TCS. The trial court found that Mark breached the contract with Bella Palma, filed a fraudulent lien, filed an invalid lien, and violated the CTFA. Furthermore, the trial court's judgment ordered that the lien affidavit filed by Mark d/b/a TCS in Harris County was invalid and of no effect; that

7

Bella Palma owes no money to Mark; and that Mark pay Bella Palma $10,000 for filing a fraudulent lien, $10,000 for violating the CTFA, $100,000 for materially breaching the contract. The trial court also ordered that Mark pay Bella Palma attorney's fees of $11,062, plus $10,000 in fees if appealed to an intermediate court of appeals, $10,000 if appealed to the Texas Supreme Court, and $20,000 if appealed to the United States Supreme Court, as well as costs of court and interest. Mark timely appealed.

## II.   PERSONAL JURISDICTION & CITATION OF SERVICE

In his first issue, Mark argues that the trial court erred when it granted Bella Palma's traditional motion for summary judgment and motion to withdraw the order granting Mark's motion to quash the citation of service because Mark had not appeared or answered in the case at the time the summary judgment was granted.[3] Mark further argues that the trial court lacked personal jurisdiction because the service of citation was defective, and that he was never served with notice of the summary judgment hearing.

### A. STANDARD OF REVIEW & APPLICABLE LAW

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Personal jurisdiction over a party, a vital component of any valid

---

[3] After the trial court granted Bella Palma's motion for summary judgment, Mark asked the trial court to set a hearing on his motion to quash the citation of service in regard to Mark. Mark argues on appeal that "[t]he trial court held an oral hearing on December 16, 2016 wherein [Bella Palma's] attorney and Mark appeared." On December 16, 2016, the trial court signed an order granting Mark's motion to quash. On January 3, 2017, Bella Palma filed a motion to withdraw the trial court's order granting Mark's motion to quash, among other relief. On January 10, 2017, the trial court signed an order withdrawing its order granting Mark's motion to quash and noting: "The Court previously overruled [Mark's] Motion to Quash as a matter of law by granting [Bella Palma's] Motion for Summary Judgment on November 21, 2016 as this was a preliminary matter."

judgment, requires the issuance and service of citation "in a manner provided for by law." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012); *see also* Tex. R. Civ. P. 124. "If service is invalid, it is 'of no effect' and cannot establish the trial court's jurisdiction over a party." *In re E.R.*, 385 S.W.3d at 563. In general, personal jurisdiction over a party is established when a party is personally served with citation. *In re E.R.*, 385 S.W.3d at 563. Furthermore, challenges to personal jurisdiction are waivable, and "there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Global Paragon Dall., LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 611 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 415 (Tex. App.—Houston [14th Dist.] 1997, no writ)).

Ordinarily, when a party makes a general appearance, the party is considered to have consented to the personal jurisdiction of the trial court and to have effectively waived any complaint as to service. *N.J. v. Tex. Dep't of Fam. & Protective Servs.*, 613 S.W.3d 317, 321 (Tex. App.—Austin 2020, no pet.); *see In re P. RJ E.*, 499 S.W.3d 571, 575 n.4 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Global Paragon Dall.*, 448 S.W.3d at 611. A party enters a general appearance and therefore consents to personal jurisdiction when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. *Global Paragon Dall.*, 448 S.W.3d at 611 (citing *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam)).

When challenging personal jurisdiction, the defendant must file a special appearance before any other pleading or motion. Tex. R. Civ. P. 120a(1). If the party files a pleading or motion before filing a special appearance, then the party waives any challenge to the personal jurisdiction of the trial court and enters a general

appearance. *See Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Komerica Post, LLC v. Byun*, No. 14-19-00764-CV, 2021 WL 1804512, at * 3 (Tex. App.—Houston [14th Dist.] May 6, 2021, no pet.) (mem. op.). A defendant does not consent to personal jurisdiction by including a challenge to the method of serving citation in its special appearance; however, if no special appearance has been properly urged, an attack on defective service constitutes a general appearance. *GFTA Trendanalysen B.G.A. Herrdum GMBH & Co., K.G. v. Varme*, 991 S.W.2d 785, 786 (Tex. 1999) (per curiam).

## B. ANALYSIS

Here, Mark did not file a special appearance challenging the trial court's jurisdiction. Instead, Mark filed pro se a single instrument including a motion to quash service of citation, a request for disclosure from third-party defendants, a demand for a jury trial, a request for attorney's fees, and a prayer that the trial court "render judgment that Bella [Palma] take nothing by this suit, that all cost be taxed against Bella [Palma], that any and all its relief be denied . . . ." Mark's instrument also included a general denial "in the alternative" "if the Court does not quash the citation and service pursuant to this motion to quash."

Because Mark did not file a special appearance challenging the trial court's jurisdiction before filing this instrument, he made a general appearance when he filed his motion to quash and the trial court acquired personal jurisdiction over him. *See* Tex. R. Civ. P. 120a; *GFTA Trendanalysen*, 991 S.W.2d at 786; *see also Hous. Crushed Concrete, Inc. v. Concrete Recycling Corp.*, 879 S.W.2d 258, 260 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("An appearance, however unintentional, constitutes a waiver of service."). Mark argues that his motion to quash did not constitute a general appearance and points to Texas Rule of Civil Procedure 122. *See*

Tex. R. Civ. P. 122. We disagree. Rule 122 provides:

> If the citation or service thereof is quashed on motion of the defendant, such defendant shall be deemed to have entered his appearance at ten o'clock a.m. on the Monday next after the expiration of twenty (20) days after the day on which the citation or service is quashed, and such defendant shall be deemed to have been duly served so as to require him to appear and answer at that time, and if he fails to do so, judgment by default may be rendered against him.

Tex. R. Civ. P. 122.

Contrary to Mark's argument, a motion to quash is a general appearance because it recognizes the trial court's jurisdiction over the parties and seeks affirmative action from the trial court by requesting that the court quash the citation. *See Exito Electronics Co.*, 142 S.W.3d at 304–05. Furthermore, Rule 122 merely delays the general appearance made by a defendant when a meritorious motion to quash is filed. *See* Tex. R. Civ. P. 122; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202 (Tex. 1985) (per curiam); *see also Allright, Inc. v. Roper*, 478 S.W.2d 245, 247 (Tex. App.—Houston [14th Dist.] 1972, writ dism'd w.o.j.) ("Upon the trial court's granting of defendant's motion to quash service of citation it, the defendant, is deemed to have entered appearance on the Monday next after the expiration of twenty days; it is deemed to have been served so as to require it to appear and answer; if it fails to do so default judgment may be rendered against it."). Accordingly, we reject Mark's arguments that the trial court did not have personal jurisdiction over him and that he had not made an appearance in the case at the time summary judgment was granted.

Next, Mark argues that the trial court erred when it granted Bella Palma's motion for summary judgment because Mark "was not properly served with [Bella Palma's] Motion for Summary Judgment, notice of oral hearing for November 18, 2016 or notice of submission for November 21, 2016 at 8:00 a.m."

A party may seek summary judgment "at any time after the adverse party has appeared or answered" in the case. Tex. R. Civ. P. 166a(a). The nonmovant is entitled to receive sufficient notice of the hearing or submission date on the summary-judgment motion so it knows when his response is due. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam). By rule, the summary-judgment movant must provide at least twenty-one days' notice before the trial court can hear the motion. Tex. R. Civ. P. 166a(c).

A party may file a post-judgment motion to preserve error as to a complaint that the party received no notice of the summary judgment motion or the hearing. *Rios v. Tex. Bank*, 948 S.W.2d 30, 33 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Garrick v. Autoliv ASP, Inc.*, No. 14-17-00818-CV, 2018 WL 3385159, at *2–3 (Tex. App.—Houston [14th Dist.] Jul. 12, 2018, pet. denied) (mem. op.). Alternatively, if a party complains that it received notice that was untimely but sufficient to enable the party to attend the summary-judgment hearing, the party must file a written motion for a continuance or otherwise raise the complaint of late notice in writing to preserve error. *See Rios v. Tex. Bank*, 948 S.W.2d 30, 33 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Garrick v. Autoliv ASP, Inc.*, No. 14-17-00818-CV, 2018 WL 3385159, at *2–3 (Tex. App.—Houston [14th Dist.] Jul. 12, 2018, pet. denied) (mem. op.).

Here, Mark filed a motion to vacate the judgment, but he did not raise any arguments regarding notice of the summary-judgment hearing or notice of submission in the motion Thus, Mark failed to preserve this argument for our review. Tex. R. App. P. 33.1(a); *see French v. Brown*, 424 S.W.2d 893, 894 (Tex. 1967); *see also Okonkwo v. Wash. Mut. Bank*, No. 14-05-00925-CV, 2007 WL 763821, at *2 (Tex. App.—Houston [14th Dist.] Mar. 15, 2007, no pet.) (mem. op.) (concluding that appellant failed to preserve for appellate review argument regarding lack of

notice of summary judgment hearing by not raising the argument in motion for new trial); *Babajide v. Citibank (S.D.), N.A.*, No. 14-04-00064-CV, 2004 WL 2933575, at \*1 (Tex. App.—Houston [14th Dist.] Dec. 21, 2004, no pet.) (mem. op.) (same).

We overrule Mark's first issue.

### III.    SUMMARY JUDGMENT

In his third issue, Mark challenges the trial court's judgment in favor of Bella Palma for breach of contract, a violation of the CTFA, a violation of the fraudulent lien statute, and its declaratory judgment that Mark's lien was invalid and that Bella Palma owed no money to Mark. Mark also challenges the award of attorney's fees to Bella Palma.

### A. STANDARD OF REVIEW

We review the trial court's rendition of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing the grant of a traditional motion for summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see* Tex. R. Civ. P. 166a(c).

### B. BREACH OF CONTRACT

Mark argues that Bella Palma was not entitled to summary judgment on its breach of contract claim because Bella Palma failed to produce evidence that there was a contract between Mark and Bella Palma.

## 1. Applicable Law

The elements of a breach-of-contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *Tamasy v. Lone Star College Sys.*, No. 14-19-00883-CV, 2021 WL 4737308, at *3, __ S.W.3d __, __ (Tex. App.—Houston [14th Dist.] Oct. 12, 2021, no pet. h.). To prove an enforceable contract, a party must establish the following elements: (1) an offer, (2) an acceptance, (3) mutual assent, (4) execution and delivery of the contract with the intent that it be mutual and binding, and (5) consideration supporting the contract. *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *DeClaire v. G&B McIntosh F.L.P.*, 260 S.W.3d 34, 44 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g).

"As a general rule, the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *House v. Hous. Waterworks Co.*, 31 S.W. 179, 179 (1895)). Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284–85 (Tex. App.—Houston [1st Dist.] 2013, no pet.).[4]

---

[4] An exception to this general rule permits a person who is not a party to the contract to sue for damages caused by its breach if the person qualifies as a third-party beneficiary or assignee. *See First Bank*, 519 S.W.3d at 102; *Brown*, 414 S.W.3d at 284. Bella Palma did not argue at the trial court—nor does it argue on appeal—that it is a third-party beneficiary under the contract between Trentham Construction and Mark or that it is an assignee.

## 2. Analysis

Here, Bella Palma's motion for summary judgment argued that Mark was a subcontractor of Trentham Construction, and its arguments relied on the contract Trentham Construction and Mark executed regarding work on Bella Palma's property. *See* Tex. R. Civ. P. 166a(c). However, the parties to the contract were Trentham Construction and Mark and there is no evidence of an assignment of a cause of action to Bella Palma by Trentham Construction. Therefore, we conclude that Bella Palma did not establish as a matter of law that it is in privity with the contract. *See First Bank*, 519 S.W.3d at 102; *see also Carr v. Norstok Bldg. Sys., Inc.*, 767 S.W.2d 936, 942 (Tex. App.—Beaumont 1989, no writ) ("It is well established that there is no privity of contract between an owner in a situation like this and the subcontractors that were subcontracted with strictly by the prime contractor.").

On appeal, Bella Palma argues that "by the end of the project, [Mark] and Bella Palma were in privity of contract" because "Bella Palma had discharged its general contractor and [Mark] was working for and billing Bella Palma directly." However, Bella Palma did not advance this argument in its motion for summary judgment. Therefore, we reject this argument. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex. 1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

## C. TEXAS CONSTRUCTION TRUST FUND ACT

Mark argues that Bella Palma does not have standing to pursue its claim for a violation of the CTFA because Bella Palma is not a "beneficiary" under the CTFA.

*See* Tex. Prop. Code Ann. §§ 162.003, 162.031(a).

### 1. Standing

Whether a party has standing to bring a cause of action is a question of law we review de novo. *See Farmers Tex. Cnty. Mutual Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "[S]tanding is a component of subject matter jurisdiction." *Id.*; *see Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) ("A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). Standing to sue may be predicated upon either statutory or common-law authority. *See Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012) (per curiam); *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).

"Like jurisdiction, standing 'is a word of many, too many, meanings.'" *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773 (Tex. 2020).

> Texas courts, having drawn upon the standing doctrine of our federal counterparts, sometimes apply the label "standing" to statutory or prudential considerations that do not implicate subject-matter jurisdiction but determine whether a plaintiff falls within the class of persons authorized to sue or otherwise has a valid cause of action.

*Id.* at 773–74 (cleaned up) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n. 4 (2014)).

> Yet we have been clear in this century that the question whether a plaintiff has established his right "to go forward with [his] suit" or "satisfied the requisites of a particular statute" pertains "in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it."

*Id.* at 274 (quoting *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). "Thus, a plaintiff does not lack standing in its proper, jurisdictional sense 'simply because he cannot prevail on the merits of his claim.'" *Id.* at 274 (quoting *Meyers v.*

*JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484–85 (Tex. 2018)).

To have standing, a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and likely to be redressed by the requested relief. *Meyers*, 548 S.W.3d at 485; *Heckman*, 369 S.W.3d at 154–56. When a statute confers standing, the statute itself provides the framework for the standing analysis. *Williams*, 52 S.W.3d at 178; *Scott*, 405 S.W.2d at 56; *In re K.D.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) ("[T]he judge-made criteria regarding standing do not apply when the Texas Legislature has conferred standing through a statute."); *see also Nephrology Leaders & Assocs. v. Am. Renal Assocs., LLC*, 573 S.W.3d 912, 917 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (noting that we do not disregard the Texas Constitution's standing requirement of injury and redressability when a statute confers standing).

### a. Misapplication of Construction Payments as Trust Funds

The CTFA is codified in Chapter 162 of the Texas Property Code. *See* Tex. Prop. Code Ann. §§ 162.001–.033. The overarching purpose of the CTFA is to serve as a special protection for unpaid subcontractors and materialmen when contractors or subcontractors refuse to pay them for labor and materials. *Fuller v. Le Brun*, 616 S.W.3d 31, 40 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Choy v. Graziano Roofing of Tex., Inc.*, 322 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The CTFA "imposes fiduciary responsibilities on contractors to ensure subcontractors, mechanics, and materialmen are paid for the work they complete." *Fuller*, 616 S.W.3d at 39; *see also C&G, Inc. v. Jones*, 165 S.W.3d 450, 454 (Tex. App.—Dallas 2005, pet. denied) ("Chapter 162 was enacted to give protection to materialmen in addition to that provided by the materialman's liens statutes." (citing *McCoy v. Nelson Utils. Servs., Inc.*, 736 S.W.2d 160, 164 (Tex.

App.—Tyler 1987, writ ref'd n.r.e.))). It "is a remedial statute that should be given a broad construction." *Dealers Elec. Supply Co. v. Scroggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2009); *see RepublicBank Dall., NA v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985); *Choy*, 322 S.W.3d at 282.

"Construction payments are trust funds under [Chapter 162] if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001(a). "A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." *Id.* § 162.002. The CTFA holds liable any "trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds . . . ." *Id.* § 162.031(a); *see Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 871 (Tex. App.—Houston [14th Dist.] 1995, writ denied); *see also In re Monaco*, 859 F.3d 413, 416 (5th Cir. 2016). The CTFA provides for the following penalties: "(a) A trustee who misapplies trust funds amounting to $500 or more in violation of [Chapter 162] commits a Class A misdemeanor"; "(b) A trustee who misapplies trust funds amounting to $500 or more in violation of [Chapter 162], with intent to defraud, commits a felony of the third degree"; and "(c) A trustee who fails to establish or maintain a construction account in violation of Section 162.006 or fails to establish or maintain an account record for the construction account in violation of Section 162.007 commits a Class A misdemeanor." Tex. Prop. Code Ann. § 162.032.

"[D]espite the absence of an express provision for a private right of action, a

breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) for whose benefit the statute was enacted." *Lively*, 904 S.W.2d at 871 (citing *Nixon*, 690 S.W.2d at 549). Thus, a party who misapplies trust funds under the CTFA is subject to civil liability to trust-fund beneficiaries whom the CTFA was designed to protect. *Dealers Elec. Supply Co.*, 292 S.W.3d at 657; *see also Mesa S. CWS Acquisition, LP v. Deep Energy Expl. Partners, LLC*, No. 14-18-00708-CV, 2019 WL 6210213, at *3 (Tex. App.—Houston [14th Dist.] Nov. 21, 2019, no pet.); *C&G, Inc.*, 165 S.W.3d at 453 ("Thus, a party who misapplies these trust funds is subject to civil liability if (1) the party breaches the duty imposed by chapter 162, (2) with the requisite scienter, and (3) the claimants are within the class of people chapter 162 was designed to protect and have asserted the type of injury chapter 162 was intended to prohibit." (citing *Lively*, 904 S.W.2d at 873)).

"An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement." *Id.* § 162.003(a); *see Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 656 n.1 (Tex. 2010) ("The beneficiaries of the trust funds are persons who provide labor or materials for the project."); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 727 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Additionally, a property owner is a beneficiary of trust funds described by § 162.001 *only* when in connection with a residential construction contract. *Id.* § 162.003(b); *see also Fuller*, 616 S.W.3d at 39 ("In 2009, the Legislature extended the [CTFA's] protections to property owners 'in connection with a residential construction contract.'").

19

### b. Analysis

Here, Mark argues that Bella Palma does not have standing to assert a claim under the fraudulent lien statute because it is not a beneficiary as defined under the CTFA. *See* Tex. Prop. Code Ann. § 162.003.

The CTFA protects and provides a cause of action to beneficiaries of construction trust funds, as defined under the CTFA. *See* Tex. Prop. Code Ann. §§ 162.001–.033; *Dealers Elec. Supply Co.*, 292 S.W.3d at 657. The CTFA includes a property owner in its definition of beneficiaries only when the when misapplication of construction trust funds is in connection with a residential contract. *See* Tex. Prop. Code Ann. § 162.003; *see also Fuller*, 616 S.W.3d at 40 (noting that the remedies associated with violations of the CTFA focus "on alleged misappropriation" of the beneficiaries' trust funds). Bella Palma's claim does not concern a residential contract. *See* Tex. Prop. Code Ann. § 162.003; *cf. WeKnow Techs., Inc. v. Hayes*, No. 05-17-00554-CV, 2018 WL 3359085, at *4 (Tex. App.—Dallas July 10, 2018, no pet.) (mem. op.) ("The Act unambiguously includes property owners as persons entitled to protection from a contractor's misapplication of trust funds in connection with a residential construction contract.").

Contrary to Mark's argument, the CTFA does not expressly confer standing on any particular set or type of individuals. *See* Tex. Prop. Code Ann. §§ 162.001–.033; *cf.* Tex. Fam. Code Ann. § 102.003. Instead, the provisions Mark cites go to the merits of Bella Palma's claim; they do not strip a court of subject-matter jurisdiction to render a take-nothing judgment if the plaintiff fails to meet the statutory requirements. *See Pike*, 610 S.W.3d at 778. Therefore, we reject Mark's argument that Bella Palma lacks standing to assert a violation of the CTFA because it is not a "beneficiary" under the statute.

Furthermore, we note that Bella Palma alleged in its petition that it paid Mark

20

with funds "that were intended to be paid to vendors and [Mark was] to act as trustee of such funds under Chapter 162.005." *See Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Assoc.*, 616 S.W.3d 558, 567 (Tex. 2021) ("[W]e have an obligation to examine our jurisdiction any time it is in doubt.") (quoting *Pike*, 610 S.W.3d at 774). Bella Palma alleged that Mark misapplied those funds; that it was "damaged in amounts exceeding $10,000 by paying third party vendors directly after [Bella Palma] already paid [Mark] for these bills"; and that Mark violated the CTFA. Finally, Bella Palma stated that Mark is liable for "actual damages, . . . statutory fees, and . . . punitive damages for such violations" and prayed for such relief. Because Bella Palma has established injury, traceability, and redressability, we conclude that it had standing to assert its claim that Mark violated the CTFA. *See* Tex. Prop. Code Ann. §§ 162.001–.004, .031; *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 567; *Heckman*, 369 S.W.3d at 158–59.

### c. Other Arguments

Mark argues next that Stanka's affidavit is not credible because Stanka "contradicts himself in his summary judgment affidavit to the point of his credibility clearly being at issue." Mark argues that Stanka contradicted himself in the following statements:

16. At this time, in August of 2013, we learned that Spirit Sand and Clay was on the way to the courthouse to file a lien against the property because [Mark] had still not paid their invoice (an invoice I had already paid to Mark Young).

17. I then received another collection letter from [Mark's] vendor Morrison Supply Company for money I had already paid [Mark].

Mark argues that these statements contradict each other because "Stanka's affidavit states that Spirit Sand and Clay and Morrison Supply both sent past due invoices to [Bella Palma] and then Stanka swears under oath that he had already paid

21

Mark at the time for the invoices." We reject this argument because the statements in Stanka's affidavit do not contradict each other by stating that Stanka paid Mark for the invoices from Spirit Sand and Clay and Morrison Supply Company, while at the same time stating that Stanka received a collection letter from Morrison Supply Company and stating that Mark had not paid the Spirit Sand and Clay invoice.

Mark also argues that the trial court erred when it granted summary judgment as to Bella Palma's claim of violation of the CTFA because Stanka and Trentham's affidavits were "conclusory and deficient," and thus, Bella Palma "has not provided any competent summary judgment evidence that Mark diverted any funds that were not used for the construction project."

Conclusory statements that are not supported by facts are not proper summary-judgment proof. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013). A conclusory statement is one that expresses a factual inference without providing the underlying facts to support that conclusion. *Padilla v. Metro. Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see, e.g.*, *Arkona Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 & n.21 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (concluding that statement in affidavit that "this was false and defamatory and has injured me in my possession" was conclusory). Affidavits containing conclusory statements that fail to provide the underlying facts supporting those conclusions are not proper summary judgment evidence. *Padilla*, 497 S.W.3d at 86. To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence, from which any conclusions are drawn. *Id.*

Here, Mark states in his brief that twenty-six of the twenty-nine statements in Stanka's affidavit are conclusory. As to Trentham's affidavit, Mark states that

22

twenty out of twenty-two statements are conclusory. However, Mark provides no substantive discussion or analysis explaining why any of the forty-nine statements complained of are conclusory, nor does he explain what factual bases are omitted from which statement. *See* Tex. R. App. P. 38.1(i). Thus, Mark has waived this argument. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Failure to . . . provide substantive analysis of the legal issues presented results in waiver of the complaint."); *see also Sandles v. Sandles*, No. 01-16-00637-CV, 2017 WL 2590226, at \*2 (Tex. App.—Houston [1st Dist.] June 15, 2017, no pet.) (mem. op.) (noting that an appellant does not present a clear and concise argument for the contentions made by making conclusory statements and holding argument waived).

Furthermore, even if Mark had not waived this argument, we disagree with Mark's characterization; the statements complained of by Mark are factual in nature. Both Stanka and Trentham's affidavits provide background facts that explain the bases of their statements in the affidavits.

Finally, Mark argues that Stanka's affidavit "does not allege any contractual relationship with Mark or Tim Young, only with Trentham Construction, Inc." and that the affidavit "only alleges damages due to lost profits which are damages under a contract theory of recovery wherein Stanka cannot prevail." Under the CTFA, construction payments are trust funds "if the payments are made to a contractor or subcontractor . . . under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001(a). Contrary to Mark's argument, Stanka's affidavit stated that Mark was "hired to do the site work on the Mason Road project." Furthermore, Stanka's affidavit provides that Mark subsequently requested to "be put in charge of the horizontal to finish" and Bella Palma "agreed." We reject this argument.

23

## D. FILING OF A FRAUDULENT LIEN

Here, the trial court's judgment found that Mark filed a fraudulent lien and awarded Bella Palma $10,000 as a result. *See* Tex. Prop. Code Ann. § 12.002(b)(1). On appeal, Mark argues that Bella Palma cannot recover under the fraudulent lien statute in a summary judgment proceeding absent a finding of intent to defraud. *See id.* § 12.002(b)(1), (c).

### 1. Applicable Law

A person may not make, present, or use a document or other record with: knowledge that the document or other record is a fraudulent lien; intent that the document or other record be given the same legal effect as a court record evidencing a valid lien or claim against real property; and intent to cause another person to suffer physical injury, financial injury, or mental anguish or emotional distress. Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a). A lien is fraudulent if it was created in bad faith or with dishonesty, a lack of integrity, or moral turpitude. *Nationstar Mortgage LLC v. Barefoot*, No. 14-19-00750-CV, 2021 WL5001660, at *2, __ S.W.3d __, __ (Tex. App.—Houston [14th Dist.] Oct. 28, 2021, no pet. h.). Additionally, when the lien at issue is filed pursuant to Texas Property Code chapter 53, a person is not liable "for the making, presentation, or use of a document or other record in connection with the assertion of the claim unless the person acts with intent to defraud." Tex. Civ. Prac. & Rem. Code Ann. § 12.002(c); *see also* Tex. Prop. Code Ann. § 53.021; *Consol. Reinforcement L.P. v. Cheraif*, No. 04-18-00443-CV, 2019 WL 2272890, at *2 (Tex. App.—San Antonio May 29, 2019, no pet.) (mem. op.).

For a traditional summary judgment, the burden is on Bella Palma to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When a plaintiff moves for a traditional summary judgment on a claim it asserts, it must conclusively prove each element of

the claim as a matter of law. *In re Gen. Agents Ins. Co. of Am., Inc.*, 254 S.W.3d 670, 674 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

## 2. Analysis

Here, Bella Palma's claim for the filing of a fraudulent lien requires Bella Palma to prove Mark's intent to defraud Bella Palma. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a), (c); *Cheraif*, 2019 WL 2272890, at *2. "Intent to defraud is not susceptible to direct proof; therefore, 'it invariably must be proven by circumstantial evidence.'" *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 46 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)). Although Mark did not respond to Bella Palma's motion for summary judgment, Bella Palma still had the burden to prove each of the elements of its fraudulent-lien claim spelled out in § 12.002(a). In order to obtain summary judgment, Bella Palma was required to prove that Mark's lien was filed with fraudulent intent as a matter of law. *Tidwell v. Roberson*, No. 14-16-00170-CV, 2017 WL 3612043, at *5 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied) (mem. op.) (affirming summary judgment that defendant committed fraudulent transfer as a matter of law and concluding that movants proved as a matter of law that defendant acted with fraudulent intent).

Bella Palma attempted to prove Mark's fraudulent intent with Stanka's affidavit. However, Stanka merely concludes that Mark's lien was fraudulent: "When Defendants found out about the lawsuit, they filed a fraudulent lien against the property. . ." Nowhere does Bella Palma prove as a matter of law that Mark's lien was filed with knowledge that it was fraudulent or that Mark filed the lien with intent to cause Bella Palma to suffer financial injury. Because Bella failed to carry its burden of proof, we conclude that the trial court erred when it granted Bella Palma summary judgment regarding its claim for the filing of a fraudulent lien. *See* Tex.

Civ. Prac. & Rem. Code Ann. § 12.002(a), (c); *Spoljaric*, 708 S.W.2d at 435; *Wohlstein v. Aliezer*, 321 S.W.3d 765, 777 & n.17 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Cheraif*, 2019 WL 2272890, at *2.

### E. DECLARATORY JUDGMENT

Next, Mark challenges the trial court's declaratory judgment that Bella Palma did not owe any money to Mark and that Mark's lien was invalid.

"A declaratory-judgment action 'provides an efficient vehicle for parties to seek a declaration of rights under certain instruments.'" *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hanna Reef, Inc.*, 623 S.W.3d 851, 864 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (quoting *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)); *see Allstate Ins. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) ("The Uniform Declaratory Judgments Act empowers Texas courts 'to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" (quoting Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a))). "Under its terms, any 'person interested' under a written contract 'may have determined any question of construction or validity' arising under that contract and 'obtain a declaration of rights, status, or other legal relations thereunder.'" *Allstate Ins.*, 627 S.W.3d at 269 (citing Tex. Civ. Prac. & Rem. Code Ann § 37.004(a)). "The Act's stated 'purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.'" *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b)).

#### 1. Money Owed

Mark first argues that the trial court erred when it granted Bella Palma a declaratory judgment that it owed no money to Mark because Bella Palma did not prove that a contract existed between Mark and Bella Palma.

Contrary to Mark's argument, "Chapter 37 does not limit the availability of relief only to those who are parties to an agreement or writing." *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 809 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) ("A person *interested* . . . under a contract or whose rights, status or other legal relations are *affected* by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.") (emphasis added); *see also Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.) ("A suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the Act itself."); *Transp. Ins. v. Franco*, 821 S.W.2d 751, 754 (Tex. App.—Amarillo 1992, writ denied) (same). Therefore, we reject Mark's argument that the trial court erred when it granted a declaratory judgment that Bella Palma owed no money to Mark on the basis that Bella Palma did not prove that a contract existed between Mark and Bella Palma.

Apart from arguing that a contract was required, Mark provides no further argument or substantive analysis of why Bella Palma's rights, status, or legal relations were not affected by the contract and fails to provide any argument or analysis of the record as to how the trial court erred when it granted Bella Palma a declaratory judgment that it owed no money to Mark. Thus, we limit our review to Mark's argument that a contract between Bella Palma and Mark was required for Bella Palma to obtain a declaratory judgment that it owed no money to Mark. *See* Tex. R. App. P. 38.1(i); *Rogers v. City of Houston*, 627 S.W.3d 777, 788 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also Dunsmore v. Univ. of Tex. Med. Branch at Galveston*, No. 14-16-00166-CV, 2017 WL 3568519, at *2 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op.).

## 2. Invalid Lien

Mark argues next that "the only mechanism for removal or invalidation of Mark's mechanic's lien is pursuant to [Texas Property Code §] 53.160." Mark cites only § 53.160 in support of this proposition, *see* Tex. R. App. P. 38.1(i), and we have not found any case supporting this conclusion.

Section 53.160, titled "Summary Motion to Remove Invalid or Unenforceable Lien," provides:

> In a suit brought to foreclose a lien or to declare a claim or a lien invalid or unenforceable, a party objecting to the validity or enforceability of the claim or lien *may* file a motion to remove the claim or lien. The motion must be verified and state the legal and factual basis for objecting to the validity or enforceability of the claim or lien. The motion may be accompanied by supporting affidavits.

Tex. Prop. Code Ann. § 53.160 (emphasis added); *see also In re M&O Homebuilders, Inc.*, 516 S.W.3d 101, 107 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) ("[A] summary motion that seeks a declaration that a lien is invalid . . . seeks a summary adjudication of that claim and operates, in effect, as a motion for partial summary judgment."). Furthermore, the grounds for objecting to the validity or enforceability of the claim or lien for purposes of a motion under § 53.160 are limited by statute to the following:

> (1) notice of claim was not timely furnished to the owner or original contractor as required by Section 53.056 or 53.057[5];
>
> (2) an affidavit claiming a lien failed to comply with Section 53.054 or was not filed as required by Section 53.052;
>
> (3) notice of the filed affidavit was not furnished to the owner or original contractor as required by Section 53.055;

---

[5] To perfect a materialmen's lien, a person must comply with the relevant sections in subchapter C of Chapter 53 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 53.051; *see also id.* §§ 53.052–.058.

(4) the deadlines for perfecting a lien claim for retainage under this chapter have expired and the owner complied with the requirements of Section 53.101 and paid the retainage and all other funds owed to the original contractor before:

    (A) the claimant perfected the lien claim; and

    (B) the owner received a notice of the claim as required by this chapter;

(5) all funds subject to the notice of a claim to the owner and a notice regarding the retainage have been deposited in the registry of the court and the owner has no additional liability to the claimant;

(6) when the lien affidavit was filed on homestead property:

    (A) no contract was executed or filed as required by Section 53.254;

    (B) the affidavit claiming a lien failed to contain the notice as required by Section 53.254; or

    (C) the notice of the claim failed to include the statement required by Section 53.254; and

(7) the claimant executed a valid and enforceable waiver or release of the claim or lien claimed in the affidavit.

Tex. Prop. Code Ann. § 53.160(b).

Here, Bella Palma sought a declaration that Mark's lien was invalid because Mark's lien affidavit was not filed pursuant to § 53.052 of the Property Code, which is included under § 53.160(b) as one of the grounds available for invalidating a lien through a summary motion filed under § 53.0160. *See id.* §§ 53.052, 53.160. However, Bella Palma also sought a declaration that Mark's lien was invalid because "all money's owed to [Mark] (as claimed by [Mark] in [his] September 2013 final bill) was fully paid." This is a separate basis for the trial court's declaratory judgment. Therefore, even if we were to assume that a § 53.160 summary motion is the only avenue available to invalidate a lien based on the grounds covered under § 53.160(b), we must affirm the trial court's declaratory judgment that Mark's lien is invalid because Mark has not challenged the separate basis for the trial court's

29

judgment that is not addressed by § 53.160. *Durham*, 587 S.W.3d at 184; *see also Haubold*, 2014 WL 1018008, at *4.

Furthermore, there is nothing in chapter 53 providing that § 53.160 is the only avenue available to invalidate a materialmen's lien. *See* Tex. Prop. Code Ann. §§ 53.001–.287; *see also Dalton Contractors, Inc v. Bryan Autumn Woods, Ltd.*, 60 S.W.3d 351, 353–54 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (concluding that issue of whether lien was valid could be resolved in arbitration); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 390–91 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (same). Other than his argument that Bella Palma was required to seek its judgment pursuant to § 53.160, Mark provides no further argument or substantive analysis of why the trial court erred when it granted Bella Palma a declaratory judgment that Mark's lien is invalid. Accordingly, we limit our review to the argument raised by Mark on appeal. *See* Tex. R. App. P. 38.1(i); *Rogers*, 627 S.W.3d at 788.

## F. ATTORNEY'S FEES

Mark argues that the affidavit of Bella Palma's attorney (Ronald Frank) does not support the trial court's judgment awarding attorney's fees to Bella Palma. Mark avers that it appears that Frank's affidavit "is for another completely different case filed in Fort Bend County" because Frank's affidavit provides that it is in relation to an "Application for Foreclosure."

Generally, when a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable *and* necessary for the legal representation. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489–90 (Tex. 2019); *see Nat'l Lloyds*, 532 S.W.3d at 809 (stating that a party seeking recover of attorney's fees from the losing party "bears the burden of establishing the fees are reasonable and necessary"); *see, e.g.*, *Long v.*

30

*Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam).

Here, Frank's affidavit provides:

5. My work necessary to prosecute my clients' Application for foreclosure is 29.5 hours. These hours fairly and accurately reflect the total hours required. These hours were necessary and reasonable. . . .

6. My billable rate is $375. This hourly fee for a named partner with 25 years litigation experience is very reasonable in Fort Bend County, Texas. Based on the work required, it is my opinion that $11,062 is a reasonable fee through the prosecution of this Motion. Therefore, it is my opinion that a total of $11,602 is the reasonable, necessary and usual attorney's fees that should be awarded at the time of this hearing.

7. Further, reasonable and necessary attorney's fees for an appeal to the Appellate Court would be $10,000 and another $10,000 if it [is] appealed to the Texas Supreme Court and $20,000 to the United States Supreme Court.

Because Frank's affidavit provides that the hours worked were necessary to prosecute an "Application for foreclosure"—a matter completely absent from the underlying case—we conclude that Bella Palma did not conclusively prove that it was entitled to the attorney's fees awarded. *See Auz v. Cisneros*, 477 S.W.3d 355, 358–60 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

## G. SUMMARY

We sustain Mark's third issue in part as to the trial court's granting of Bella Palma's summary judgment motion regarding its claims for breach of contract and the filing of a fraudulent lien. We also reverse the award of attorney's fees to Bella Palma. We overrule the remainder of Mark's third issue.

## IV. CONCLUSION

We reverse the trial court's judgment in part as to: (1) Bella Palma's claim for the filing of a fraudulent lien and the corresponding award of $10,000, and (2) Bella Palma's claim for breach of contract claim and the corresponding award of

31

$100,000. We also reverse the trial court's award of attorney's fees. We affirm in part the remainder of the trial court's judgment and remand for further proceedings consistent with this opinion.

/s/ Margaret "Meg" Poissant
   Justice

Panel consists of Justices Spain, Poissant, and Wilson. (Spain, J. concurring without opinion).